## Case No. 3,934.

### DIXON et al. v. UNITED STATES.

[1 Brock. 177.][1]

Circuit Court, D. Virginia. May Term, 1811.

EMBARGO BONDS—DECLARATION UPON—VARIANCE—VALIDITY OF BOND AT COMMON LAW — STATUTORY REQUIREMENTS—CONTRACT IN RESTRAINT OF TRADE.

1. The assignment of breaches in an action upon an embargo bond, is a part, and a very important part, of the declaration: and upon demurrer to the declaration, the plaintiffs' attorney will not be permitted to strike out the assignment of breaches, on the ground that the declaration is good without it. Such a course would not be tolerated in any court.

2. A variance between the declaration and bond, is an erroneous description of the instrument referred to, so that it does not appear to be the same when produced in evidence, either on oyer, or at the trial.

3. A bond made payable to "The United States of America," would, it seems, be binding at common law, for "The United States of America" is a corporation, endowed with the capacity to sue, and be sued, to convey and receive property.

[Cited in U. S. v. Ames, Case No. 14,441.]

---

[1] [Reported by John W. Brockenbrough, Esq.]

4. The rule, that all contracts made in restraint of trade are void at common law, is founded upon the principle, that such contracts contravene the policy of the law; and, it seems, that this rule would not vitiate a contract in re straint of trade, entered into at a time when it was the policy of the law to impose restrictions upon commerce; consequently, that an embargo bond, made while the embargo laws were in force, would be binding as a common law bond.

5. An embargo bond made payable to the United States, is good, though the act directed that the master, &c., should give bond to the collector of the district from which the vessel was bound to depart, the proper construction of that act requiring, that the bond should be taken by the collector, but made payable to the United States.

6. A clause was inserted in an embargo bond, not authorised by the statute, and a condition was omitted, which the statute directed to be inserted. It seems: 1. That a statutory bond that contains more than the statute requires, is not vitiated by the surplus matter, but the court will reject the surplusage, as a mere nullity, and construe the bond as if such surplus matter were not contained in it. 2. That a statutory bond is vitiated by the omission of a material condition required by the statute, viz.; "dangers of the seas excepted." (See these two last po sitions, further examined, in U. S. v. ——, [Case No. 14,413], and reaffirmed; see, also, note 5 to the same case.)

[Distinguished in U. S. v. Mynderse. Case No. 15,851. Cited in U. S. v. Humason, Id. 15,420.]

Writ of error from the district court of Norfolk. The United States brought an action of debt in that court, on an embargo bond, executed by the plaintiff in error, and others, which bond was in the words and figures following, to wit: "Know all men by these presents, that we, John Lewis, master of the ship, called the 'Adams,' of Boston, burthen 189 tons, licensed for the coasting trade, and William Dixon of Portsmouth, &c., are held and firmly bound, unto the United States of America, in the just and full sum of $23,900, to which payment well and truly to be made, &c. Whereas the following goods, wares and merchandise, that is to say, 10,000 staves, &c., as per manifest now delivered to the collector of customs for the district of Norfolk and Portsmouth, are intended to be transported in the said vessel, called the Adams, to the ports of Boston and Portland, in the state of ——: Now the condition of the above obligation is such, that if the said vessel shall not proceed to any foreign port or place, and the cargo aforesaid shall be relanded in some port of the United States, then the aforesaid obligation shall be void, otherwise to remain in full force." In the assignment of breaches, the plaintiffs averred that the condition of the bond had been broken in this, viz: that the cargo of the said vessel, "which was a vessel duly registered according to the laws of the United States," had not been relanded in any port of the United States. The defendant craved oyer of the bond, and demurred, and the plaintiffs joined in demurrer. The district court overruled the demurrer, and gave judgment for the plaintiffs,

and the defendant obtained a writ of error to this court.[2]

MARSHALL, Circuit Justice. This cause comes on upon a demurrer to a declaration, assigning breaches of the condition of a bond of which oyer had been given. Previous to an investigation of the points supposed to arise, it becomes necessary to decide how much of the writing certified by the clerk of the district court is to be considered as essentially the record now before this court. By the attorney of the United States it has been contended, that he may strike out the assignment of breaches, and support his judgment upon the declaration, without that assignment. Consequently, that the case is to be considered as if no assignment of breaches was to be found in the record. If the demurrer should not be understood to confess a breach of the condition not shown by the declaration, it would follow that, strike out the assignment of breaches, and there is an end of the case. If the demurrer would be construed to confess a breach of the condition, still the assignment of breaches is a part of the declaration. It is an amendment of the declaration, and has the same effect, as if originally inserted in it. Can it be supposed that, where a part of the declaration discloses a fact which is cause of demurrer, the plaintiff, because he can support an action without such statement, may strike it out, and yet hold the

[2] It is essential to the clear comprehension and application of the reasoning of the chief justice, in the following opinion, that the following sections of the original and supplementary embargo acts should be inserted entire. The second section of the original act, passed on the 22d of December, 1807, declares: "That during the continuance of this act no registered or sea letter vessel, having on board goods, wares and merchandise, shall be allowed to depart from one port of the United States to any other within the same, unless the master, owner, consignee or factor of such vessel shall first give bond, with one or more sureties, to the collector of the district from which she is bound to depart, in a sum of double the value of the vessel and cargo, that the said goods, wares or merchandise shall be relanded in some port of the United States, dangers of the seas excepted; which bond, and also a certificate from the collector where the same may be relanded, shall, by the collector respectively, be transmitted to the secretary of the treasury. All armed vessels, possessing public commissions from any foreign power, are not to be considered as liable to the embargo laid by this act." 2 Story's Laws, 1071 [2 Stat. 451]. The first section of the supplementary embargo act, passed on the 9th of January, 1808, declares: "That during the continuance of the act to which this act is a supplement, no vessel licensed for the coasting trade shall be allowed to depart from any port of the United States, or shall receive a clearance, until the owner, consignee, agent or factor shall, with the master, give bond, with one or more sureties, to the United States, in a sum double the value of the vessel and cargo, that the vessel shall not proceed to any foreign port or place, and that the cargo shall be relanded in some port of the United States." 2 Story's Laws, 1071 [2 Stat. 453].

defendant to his demurrer? This would not be tolerated in any court. The assignment of breaches, therefore, is certainly a part, and a very essential part, of this record.

It is alleged by the plaintiffs in error, that there is a variance between the bond declared on, and that exhibited on oyer, which is fatal, and of which they may avail themselves on demurrer. That the law is as stated, I readily admit; but the fact of variance cannot be conceded. I understand a variance to be an erroneous description of the instrument referred to, so that it does not appear to be the same when produced in evidence, either on oyer or at the trial. In this case, the bond represents the vessel as a licensed vessel, and the declaration avers her to have been, in fact, a registered vessel. This averment in the declaration, however, is not in that part which professes to describe the bond. It is an extrinsic fact, which exhibits this case of a registered vessel, which has given a bond, stating her to be a licensed vessel. The question appears to be, not whether the bond be erroneously described, but how far such a bond conforms to the statute, and is binding on the obligors?

It is contended, on the part of the plaintiffs in error, that the bond is void. It is void, they say, at common law, because the United States of America, not being a natural but an artificial being, is incapable, at common law, of becoming a party to a contract. The United States of America will be admitted to be a corporation. But it is incidental to a corporation to sue and to be sued, to convey and to take property. Proper organs for conveying must certainly be provided before this power can be executed; but if it be incidental to this ideal being to receive, then a conveyance to it, or an obligation to it by its proper name, would be valid, unless there be no person to whom it can be delivered. A claim to the obligation, by the officer authorised by law to assert that claim, would seem to be sufficient evidence of assent to the contract, and if there be any person appointed to transact the particular business, a delivery to him would be a good delivery. The instances given to illustrate the position taken by the plaintiffs in error, are those of a corporation which has acted, not by its corporate name, or of a corporation that has expired, neither of which is supposed to be the fact in this case. A bond given to the people of the United States would, undoubtedly, be void at common law, and perhaps a bank whose charter had expired might no longer be capable of sustaining an action; but "The United States of America" is the true name of that grand corporation which the American people have formed, and the charter will, I trust, long remain in full force and vigour. The bond, it is said, is also void at common law, because it is made in restraint of trade, in restraint of common right. Had there been no act of congress prohibiting foreign trade, there would have been much force in this objection. But the rule relied on is founded on the principle, that the obligation is hostile to the policy of the law, that it surrenders legal rights, the exercise of which are conducive to the general interest. If the case be not within this principle, it is not within the rule to which the principle has given existence. If, at the time, the policy of the law restrained trade, a bond in restraint of trade would not seem to be void, unless it extended so far as to contravene the spirit and intention of the law.

But whatever may be the fate of the objections made to this instrument, as one resting on the common law, it is contended, that it does not conform to the statute, and, therefore, that it is not supported by it:

1. Because it is made payable to the United States, and not to the collector. The words of the act under which the bond is taken, require, that the bond shall be given to the collector of the district from which she is bound to depart. Original embargo act of December 22, 1807, § 2. It has been argued with considerable force, that the terms used, according to their natural meaning, import that the bond shall be payable to the collector; and this construction is the stronger because, in subsequent statutes on the same subject, the same terms are obviously used in the sense which the plaintiffs in error affix to them in this act. That this argument is correct in the fact it states, is admitted; but although the natural meaning of the words "give bond to the collector," be, that the bond should be made payable to the collector, yet it is not their necessary meaning; and if, upon a consideration of the whole subject, it be reasonable to suppose, that the legislature used them in a different sense, they ought to be construed according to that sense. The doctrine, that penal laws are to be construed strictly, does not oppose a liberal construction of this part of the act; for take it the one way or the other, and it does not render the law more or less penal. The words ought to be construed as they would have been construed before the execution of a bond.

The act itself furnishes motives for the opinion, that the legislature intended the bond to be taken by the collector, but to be made payable to the United States.

There is no clause in the act appropriating this penalty to the United States. Consequently, if made payable to the collector, it would be for his sole benefit. It being a penalty inflicted for a breach of the laws of the United States, there can be no reason for supposing that it would be bestowed entirely on the collector. The act provides, that the bond thus taken shall be transmitted to the secretary of the treasury. Why transmit it to the secretary, if it enured to the use of the collector only? The additional act, however, is deemed conclusive on

this point. That act declares, that in every case where a bond hath been given to the United States, under the act laying an embargo, a suit shall be instituted within four months, if a certificate of relanding the cargo be not produced. See additional embargo act of March 12, 1808, § 3; 2 Story's Laws, p. 1080, § 3 [2 Stat. 473]. Now, no bond is to be taken under the act laying an embargo, but those which are of the same description with that on which this suit is instituted. Consequently, the legislature contemplated this as a bond which was to be given to the United States, but delivered to the collector. Had this third section of the additional act been inserted in the original embargo act, the doubt would probably never have been suggested. It is not to be denied that, with respect to this bond, the case is to be considered as if the two acts had formed one act. In the case decided before Judge Washington (U. S. v. Hall, [Case No. 15,285]), in Pennsylvania, the bond was taken to the United States; and I recollect one case decided in the supreme court, on a bond taken under the same law, in the same manner (Id. 6 Cranch [10 U. S.] 171). In the case in the supreme court, this objection was not made. If it was made before Judge Washington, it was overruled.

2. But if the bond be admitted to pursue the statute, in being made payable to the United States, the condition varies essentially from it. A clause is inserted in the condition, not warranted by law, and an exception is made by the law which is not inserted in the condition.[3] The bond, therefore, does not pursue the statute. The question is, whether the variance be such as to avoid the bond as a statutory obligation? That the member of the condition not required by the statute, cannot be permitted to prejudice the obligors, is admitted by the attorney for the United States.[4] But he contends, that it cannot affect so much of the condition as pursues the statute. The plaintiffs in error insist, that it vitiates the whole bond, because it makes the instrument a different one from that which the collector was authorised to demand.

---

[3] It will be perceived that throughout this opinion, the bond on which the suit was brought, is treated by the chief justice as a bond taken under the 2d section of the original act, and not under the 1st section of the supplementary act (see these sections quoted, ante, p. 179): although, in point of fact, the condition of the bond conformed more nearly to the latter than to the former section. It is so treated, it is presumed, because the declaration having averred, that the vessel was a registered vessel, the demurrer to the declaration must be understood as admitting that she was truly described in the declaration. The condition inserted in the bond, not required by the original act was, that the vessel should not proceed to any foreign port or place, and the omitted condition was, "dangers of the seas excepted."

[4] U. S. v. Hipkin [Case No. 15,371], decided in the district court at Norfolk: the same concession was made by the district attorney.

The cases adduced by neither party, appear to me to decide the question, nor have I been able to find one that does. If a statute render a bond void, which is taken for a particular object, and one be taken with a condition in part, for this illegal object, and in part for other objects not illegal, it is clear law, that the illegal part vitiates the whole instrument. It is also believed, that if a bond be given at common law, where both the obligor and obligee are free agents, acting for themselves on an equal footing, and a part of the condition be void, but there is no statute annulling the bond on account of that condition, the instrument is valid as to so much as is lawful. But the case of a bond, taken under a statute by an officer specially empowered to take it, and containing additional conditions not warranted by that statute, differs essentially from either of these cases. The general policy of the law must require that the statute should be pursued, and the nature of the case requires, that the power should be executed conformably to the act creating it. If the form of the bond and condition were prescribed, there could be no doubt of the necessity of pursuing that form strictly and literally. But the form of the condition is not prescribed, and it must be sufficient, that the bond conform substantially to the statute. But may the statute be exceeded? It would certainly be mischievous, to allow officers to insert in the bonds they are empowered to require, conditions not warranted by law. Although courts and lawyers may know that such conditions have no effect, obligors may not know it, and this abuse of official power may very materially affect the interest of individuals, who may regulate their conduct on the opinion, that they are bound to the full extent of the instrument they have executed. That, in this particular case, the condition inserted may not be in hostility to the general views of the legislature, cannot materially vary the question, for it is not warranted by the statute; and if the officer be at liberty, under the colour of office, to introduce such conditions as his own judgment may approve, then his judgment, and not the statute, becomes the director of his conduct. Yet it is going far to say, that, for the insertion of even a material condition, not warranted by law, not only the unauthorised condition, but the bond, in other respects lawful, becomes absolutely void.

This question, if considered in a general point of view, is, certainly, not without its difficulties. But there is a particular aspect belonging to the case itself which ought not to be entirely overlooked. It is said, that if this bond be void under the statute, it is good at common law. That is, that if the statute had directed no bond, still judgment might be obtained on this obligation, as on a voluntary contract by which the obligors bind themselves not to do an act

which the policy of the law prohibits. If this argument be correct, then these obligors are liable at common law, under this bond, for the breach of that part of the condition which is now under consideration. The third section of the first supplemental act (2 Story's Laws, 1072, § 3) subjects the vessel and cargo to forfeiture, in the very case which this condition contemplates; and on a failure to seize them, renders the owner or owners, agent, freighter, or factor, liable for the double value. This forfeiture is not secured by bond. If then, for the fact of going to a foreign port, the obligors are liable at common law under this bond, and are also liable under the statute, this circumstance seems to strengthen very much the reasons for requiring, that bonds taken under colour of office should contain no condition not warranted by law. This condition is exceptionable in other respects. It omits the words, "dangers of the seas excepted." Original act of December 22, 1807, § 2. The attorney for the United States admits, that if these words be material, the omission is fatal. I should have been astonished had he not admitted it. But he contends that they are immaterial, because the law implies the exception. It is not to be doubted, that the law does imply, as an exception, any inevitable event which renders the performance of the condition impossible. This has been solemnly decided in the supreme court, in an embargo case. U. S. v. Hall, supra. But the plaintiffs in error have shown that the term "dangers of the seas," has a broader meaning than would be allowed to it if limited to those inevitable events which, being unmixed with human negligence, are ascribed to Providence. In construing this act, which is emphatically a penal law, since it punishes with extreme severity, transactions, which, independent of the statute, would be entirely innocent, those maxims which time has rendered venerable, and whose utility experience has confirmed, must be totally disregarded by the court, which would narrow the meaning of words in order to create the forfeiture.

If, then, the case rested entirely on the original act, I should without hesitation have pronounced the opinion, that these words were material, and that the omission was fatal. But the third section of the additional act, gives a legislative construction to the words "dangers of the sea" in the original act, which, with respect to bonds taken after the 12th of March, is to be taken into consideration. This law enacts, that if a certificate of relanding be not produced within four months, bonds taken under any of the embargo acts shall be put in suit, "and judgment shall be rendered against the defendants, unless proof be produced of such relanding, or of loss by sea, or other unavoidable accident." The word "other" certainly goes far to prove the sense of the legislature to be, that the loss by sea, to excuse the nonperformance of the condition of the bond, must be an unavoidable accident. But is a loss produced by unavoidable accident, in the sense of this law, synonymous with a loss produced by the act of God? This is not entirely clear. The object of the law is. not so much to secure the relanding of the goods in the United States, as to prevent their transportation to a foreign port. The relanding is a mean to secure this ultimate point, and with a view to it the law is framed. The words "unavoidable accident" may be construed, any accident which renders a breach of the condition inevitable, by rendering the relanding of the goods impossible, and which renders it also impossible to convey the goods to foreign ports. The word "unavoidable" is not attached to "loss by sea." It would seem, then, as if loss by sea would excuse the failure to reland, since relanding would be impossible, although, in bringing about that loss, something was to be ascribed to human negligence. If this be the correct construction of the act, that part of the condition which is required by law, and which is omitted, does not become entirely unimportant. Should a different construction be put on this section, it must yet be admitted to be a question of uncertain solution until the opinion of a court in the last resort shall be taken on it; and can an officer be permitted to vary the condition of a bond prescribed by law, in a point, the importance of which is so very doubtful? I do not rest on the circumstance that this act declares that judgment shall be rendered against the defendants unless loss be proved, and does not say that judgment shall be rendered for them, if such loss be proved, because I believe no court could hesitate in supplying those words.

There is still another part of this bond, which, in my judgment, deserves consideration. The vessel is averred in the declaration to have been a registered vessel, and the court must understand this to be the fact. If a licensed vessel, that part of the condition which stipulates that the vessel shall not proceed to any foreign port or place, conforms to the statute. It is, consequently, a material part of the condition which binds the obligors, unless they could be permitted to contradict their bond, and could be certain to find evidence to support their plea. These are difficulties to which the collector has no right, under the statute, to expose them. The obligors could escape the effect of this argument, only by maintaining that the bond is void as a bond given by a coasting vessel, because it does not appear to have been executed by the owner as well as the master. But the owner and master may be the same person. One court has already decided that this objection would not be valid, and I am not confident that other courts might not affirm the decision. If so, the condition which is introduced without the authority of law, is a ma-

terial one. But if these points could be decided against the defendants, it is, in my opinion, not for an officer taking a bond under a statute to exclude a condition prescribed by law, because, in his opinion, its insertion is useless. It is a point on which the judgment of the officer is not to be exercised; and whether right or wrong, the effect will be the same. He is a ministerial officer, whose business it is to pursue the statute, and if he fails to do so, the statute will not sanction his act. Although the operation of the bond should be the same, whether the condition prescribed by law be inserted or not, the law considers that condition as material, or it would not have been prescribed. The record, then, as it appears in this court, exhibits a bond not demandable under the statute from a registered vessel, which this is admitted to be, and a suit on such bond cannot be sustained under the statute. If, as is my present opinion, the whole penalty be recoverable in a suit on a statutory bond, yet it is not recoverable on a bond rendered valid only by the common law, and deriving no aid from the statute. This is a contract said to be good at common law, and if it be, then being a contract made in Virginia, the United States could only recover according to the laws of Virginia the damage actually sustained. In the judicial act it is declared, that, in such cases, the court shall give judgment only for so much as is equitable, which must, on the application of either party, be referred to a jury. But I am strongly inclined to the opinion that bonds taken to the government by one of its officers, to prevent the commission of an act rendered culpable by statute, if not valid under the statute, cannot be supported at common law, so as to recover damages. I can perceive no criterion by which damages may be ascertained. I am by no means clear in this opinion; but as the award of a writ of inquiry, with directions to consider the penalty as no guide to the jury in estimating damages, would be obviously a proceeding never contemplated by the law in these cases, I shall not award one, but shall sustain the demurrer.