## Case No. 14,413.

### UNITED STATES v. ——.

[1 Brock. 195.] [1]

Circuit Court, D. Virginia. Nov. Term, 1811.

BONDS—STATUTORY REQUIREMENTS—SURPLUSAGE —OMISSION—EMBARGO.

1. A statutory bond, which superadds a condition that the statute does not authorise, is not vitiated by the surplus matter, but the court will reject the surplusage as a mere nullity, and construe the bond as if such surplus matter was not contained in it.

[Cited in U. S. v. Mynderse, Case No. 15,851; Hawes v. Marchant, Id. 6,240.]

[Cited in Berrien Co. Treasurer v. Bunbury, 7 N. W. 704, 45 Mich. 84.]

2. But a statutory bond is vitiated by the omission of a material condition required by the statute, viz.: "dangers of the seas excepted."

[In error to the district court of the United States for the district of Virginia.]

At law.

MARSHALL, Circuit Justice. This is a writ of error to a judgment rendered in the district court, in favour of the defendant, on a bond taken to the United States, under the act laying an embargo. It is such a bond as was declared void, in the case of United States v. Dixon [Case No. 3,934], and is now brought up for the purpose of revising that decision. It is unquestionably the duty of every court, to review its own judgments with the same impartiality, with which it reviews the judgments of other tribunals; and if this court fails in the performance of that duty, the failure is unknown to itself. Previous to his entering on his argument, the attorney for the United States called the attention of the court to an inconsistency in the different parts of the opinion, rendered in the case of U. S. v. Dixon [supra]. In that case, as in this, the condition of the bond was in part unauthorized by law, and a condition was omitted, which the law was supposed to require. In its

[2] [From 4 Law & Eq. Rep. 149.]
[1] [Reported by John W. Brockenbrough, Esq.]

reasoning, the court inclined to the opinion, that the surplusage did not vitiate the bond; but determined that it was vitiated by the omission of a material condition required by law. The reason for determining the two objections differently, is this. The court supposed itself competent to say, on a bond containing every thing required by law, and something more, that the surplusage might be considered as an absolute nullity, and the bond construed as if such surplus and void matter was not contained in it. This is not a novel principle. There are many cases in which surplus matter is rejected. By rejecting it in this case, the bond conforms to law, and it is an effort to give validity to the instrument. It is possible, the effort may not be defensible. But where an essential circumstance required by law, is omitted in the bond, the court does not believe itself competent to supply the omission, and to make the bond conform to the statute. No analogous case is known, in which a court of law exercises such a power. The court may reason erroneously, in supposing itself competent to reject surplus matter, stated in a statutory obligation, which contains every thing required by law, and incompetent to insert in such obligation, matter which it does not contain; or it may apply the principles improperly in the case. But the inconsistency of the two opinions is not perceived. If there be hostility between them, if there be any irreconcilable opposition, between the two positions, that a court may reject surplus matter in an instrument, but cannot aid the want of substance, that hostility, that opposition, is not yet discovered.

Passing by this supposed inconsistency, on the existence or non-existence of which the cause certainly does not depend, the court will proceed to consider the arguments urged to show, that the judgment below is erroneous. The first position to be examined is this: It is contended that the law does not require the words "dangers of the seas excepted," to be inserted in the bond.[2] The statute itself must decide how far this position is correct. The words are, "the master, &c., of such vessel shall first give bond, &c." If no more was intended by this position, than to say that the very words in which the obligation should be expressed are not prescribed in the statute, the position would be true in itself, but the court would be at a loss to discern its application to this case. On a statute which prescribes, not the words, but the substance of a bond, the force of that argument is not perceived, which contends, that because the precise form is not given, the substance which is given may be disregarded. If it was intended to say that the statute does not require the exception in

some form to appear in the bond, the correctness of the construction cannot be admitted. The statute directs that no registered vessel, having a cargo on board, shall be allowed to depart from one port of the United States for another, unless the owner, &c., shall first give bond, &c. The bond is certainly directed by the statute. The sum in which it shall be taken is directed. The purpose for which it shall be taken, is certainly directed by the statute. It is not supposed that this law will be so construed by the attorney for the United States, as to be satisfied with a bond of any description which the caprice of the officer taking it might suggest. All, it is presumed, will admit that a penal sum must appear in the bond as being double the value of the vessel and cargo. But is this obligation to stand single and unconditional, as a positive debt due to the United States, on the execution of the bond? Certainly not. The law does not consider an immediate debt as existing, and if the bond were to bear that form, its appearance would be in precise opposition to its real nature, and to the effect the law means to give it. It would be, too, in opposition, as, the court conceives, to the very words of the act. The bond is, by the statute, to be taken in double the value, "that the goods, wares, and merchandise, shall be relanded in some port of the United States." The bond is certainly to secure the relanding of the goods; and how are the words, "that the goods, &c., shall be relanded in some port of the United States," to be satisfied, otherwise than by inserting those, or equivalent words, in the bond? To me it seems, that by the language of the statute, they are peremptorily required. If this be correct, then the exception also must form a part of the condition. It is impossible to distinguish between the necessity of inserting one and inserting the other. They are completely identified in this respect. They are equally required in the same sentence and the same words. I understand the statute, then, as requiring, that the exception shall appear in the obligation. On this point, its mandate is positive. This point will, if possible, be made more clear, by comparing the language of the original embargo act, which prescribes the bond, with a sentence in the additional act, which directs that such bonds shall be put in suit. It is obvious that "other unavoidable accidents"[3] are to form no part of the bond.

The establishment of the construction which has been considered, was, in some degree necessary to the operation of the next argument urged against the judgment of the district court. It was, that the insertion of the exception was perfectly useless, since without its insertion, the defence would be precisely the same, because (1) being in the law, the exception would avail the defendant

[2] See the second section of the original embargo act of the 22d of December 1807 [2 Stat. 451], quoted at length in note 1 to the case of Dixon v. U. S. [supra].

[3] Act March 12. 1808, c. 33, § 3 [2 Story's Laws, 1079; 2 Stat. 453, c. 8].

though not in the bond; (2) the common law exception is as broad as the statutory exception.

First. I am, certainly, not prepared to say, that on a suit instituted on a bond given under the act, the obligor might not avail himself of this defence, though the exception should not appear in the instrument, and the instrument should be deemed valid. Neither am I absolutely prepared to assert the affirmative of this proposition. I speak of the act as standing alone. There is no penalty affixed to the failure to reland the goods except the bond, no duty except what appears in the condition, no excuse for the non-performance of that duty, but what appears in the exception. The law does not declare that loss by sea shall excuse the failure to reland the goods in the United States, but declares that such exception shall appear in the condition. If, without such exception, the bond could be declared valid as a statutory obligation, then the defence must be made by pleading an extrinsic matter, which is no otherwise stated to be a sufficient defence than by being required as a part of the condition. The rules of pleading and the technical doctrines respecting specialties, would expose an obligor under such circumstances to difficulties to which the law did not mean to expose him.

Second. The second objection to the judgment is, that the words omitted are immaterial, because the common law gives an exception as broad, indeed broader, than that given by the statute. Neither am I prepared to accede to this proposition. The term "perils of the seas" in marine insurances, is inserted among a long list of damages which are enumerated in the same instrument. Marsh. Ins. 414.[4] In consequence of being placed with so many other perils, particularly mentioned, this is construed in policies of insurance to have a more restricted meaning than the words of themselves import. It does not mean dangers from men of war, &c., because those dangers are particularly recited. But, standing alone, those words would be much more extensive. Id. 416. But however this may be, the legislature have commanded that the exception form a part of the condition of the bond. If such condition do not appear, it is not such a bond as the statute has directed, and has authorized the collector to take. The exception is, in itself, very material, and, therefore, the officer is not at liberty to dispense with it, although it should be true that by skilful pleading, the defect might be cured. The act does not permit him to impose this risk on the obligor. The bond to be good as a statutory bond, ought to contain what the law requires.

, NOTE. A brief review of some of the cases decided in the courts of the United States, involving the questions which have been discussed

4 2 Marsh. Ins. (2d Am. Ed. from 2d London Ed.) bk. 1, c. 12, pp. 485, 487.

and settled in the above opinion, and in that of Dixon v. U. S. [Case No. 3,934], seems called for in this place. They amply sustain the principal positions taken in the above cases by Chief Justice Marshall.

In the case of U. S. v. Morgan [Case No. 15,809], a suit was brought by the United States, (as in both of the above cases) upon an embargo bond, taken under the second section of the original embargo act of December 22, 1807. The defendant's plea set forth the following objections to the bond: (1) That the bond should have been made payable to the collector, and not to the United States. (2) That the words "dangers of the seas excepted" were omitted in the condition of the bond. To this plea the plaintiff demurred. Judge Washington admitted that the bond was properly made payable to the United States, but in reference to the second objection, he said, that as the collector "had no authority to take such a bond but in virtue of a power conferred upon him by the government of the United States, the power should have been, at least, substantially pursued. The embargo law, under which this obligation was taken, does not set out, in precise terms, the form of it; but the material parts of it are clearly prescribed. It is to be in a sum of double the value of vessel and cargo, with condition that the goods shall be relanded in some port of the United States, dangers of the seas excepted. If it be taken in a greater sum than the law directs—if the condition stipulate a relanding elsewhere than in the United States—if it stipulate a relanding absolutely when the law requires it to be done on a certain condition, &c., it is not the bond which the officer was authorized to take, and all is void. A contrary doctrine might be productive of the most intolerable oppression to the citizen, as well as of detriment to the government." "Applying the above principles to this case, the bond is void." The demurrer to the plea was overruled, and judgment was rendered for the defendants. This case was decided in Pennsylvania, at the April term, 1811, of the circuit court of the United States.

In the case of U. S. v. Smith [Case No. 16,334], it was urged as an objection to the validity of an embargo bond, that it was made payable to the United States, instead of to the collector. The objection was overruled.

In relation to the general principle, that statutory obligations must conform strictly to the law, by virtue of which they are taken, the decisions, both in England and this country on the subject, are examined, very carefully and with much ability, by Judge Hopkinson, in a case before the district court of the United States, for Pennsylvania. See U. S. v. Brown [Case No. 14,663], decided in February, 1830. That was a suit upon an official bond, taken under acts of congress, of the 22d of July 1813 [3 Stat. 19], and of the 9th of January, 1815 [Id. 164]. The condition of the bond was, "that the aforesaid N. R., has truly and faithfully discharged, and shall continue truly and faithfully to discharge the duties of said office, &c." and the condition prescribed by the law was, "for the true and faithful discharge of the duties of his office, according to law." The officer had given a similar bond, with the same condition, two years before, but the sureties were changed, and the suit was brought against the representative of a surety to the second bond. The second act contained a proviso, that nothing contained therein, should "be deemed to annul or impair the obligation of the bond heretofore given," &c. The principal question raised by the pleadings in the cause, was, whether the bond was good as a statutory obligation, the condition of the bond, so far as it was retrospective, not conforming to the condition prescribed by the statute, which was prospective only; or, in other words, (as the judge stated the question in general terms,) "whether if the condition of a statutory bond, contains more than is required by the statute, the bond is wholly void?" The question was, the judge

said, not whether the court could give the bond this retrospective effect, according to its tenor: that was not pretended on the part of the plaintiffs: but whether this retrospective condition, departing from the statute, rendered the bond wholly void, so that no recovery could be had for breaches of the condition, made after the execution and delivery of the bond?

After a thorough investigation of all the cases on this subject, the judge concluded as follows: "From the examination of the case, we may consider it as settled, that if a bond be taken at the common law, with a condition in part good, and in part bad, a recovery may be had on it for a breach of the good part. This being the general common law principle, it is incumbent on the defendant to show, that a different rule is established, in regard to a statutory obligation, on a bond authorised and required to be taken by a statute. An able and laborious endeavour has been made to sustain this distinction by the cases, and arguments drawn from them, to which I have referred with a careful examination. In my opinion, the distinction is not supported, as applicable to a case like the present, in which there is nothing in the statute declaring, that bonds that vary from the prescribed form shall be altogether void, and in which the good part of the condition may be easily separated from the bad. Nothing is required to be added to the contract, and nothing to be taken from it, but what is favourable to the obligor; by diminishing the extent of his responsibility." Judgment on the demurrer rendered for the United States. This opinion of Judge Hopkinson, is in conformity with those of Washington, J., in Armstrong v. U. S. [Case No. 549], decided in 1811, and in U. S. v. Howell [Id. 15,405], decided in 1826.