# WALKER ET AL. *vs.* CHAPMAN, GOVERNOR, &C.

1. In summary proceedings under the act of 1820, against a tax collector, the notice which is substituted for a declaration need not contain every matter which is necessary in a declaration; if the notice is issued by the Comptroller, and alleges that the defendant first named was the tax collector of a certain named county for a particular year—that he failed to pay into the State treasury, within the time prescribed by law, a specified amount of money, which was the balance of the taxes collected by him as such collector—that the other defendants were his securities upon his official bond, the date and amount of which are stated, and which, it is alleged, was payable, conditioned and approved, as required by law; and states that the motion will be made at a specified term of the Circuit Court, by the Attorney General, in the name of the Governor, for the use of the State,—it is sufficient, although the facts are not stated with that degree of technical precision and fulness which is required in a declaration.

2. When the caption of the notice is: "Comptroller's Office, State of Alabama," it is a sufficient compliance with the constitutional requisition that all process shall be in the style of the State of Alabama.

3. Where a statutory bond superadds a condition which the statute does not require, its validity, even as a statutory bond, is not affected by the addition, which will be rejected as surplusage.

4. Although the act of March 6, 1848, (Pamphlet Acts, page 8 § 18,) applies only to defaults committed under it, and not to those committed before its passage, yet the Circuit Court of Montgomery county has jurisdiction of a motion for a summary judgment against the tax collector of another county, either under the act of March 3, 1848, (Ib. page 114,) or that of February 29, 1848, (Ib. page 141.)

5. When a statute specifies a time within which a public officer is to perform an official act regarding the rights of others, it is merely directory as to the time within which the act is to be done, unless from the nature of the act, or the phraseology of the statute, the designation of the time must be considered a limitation on the power of the officer; and *a fortiori*, this rule applies to public interests.

6. The statute of limitations which provides (Clay's Digest 481 § 34,) that no person shall be prosecuted for any fine or forfeiture under any penal statute, unless the prosecution is instituted within twelve months after the fine or forfeiture is incurred, does not apply to summary proceedings against a tax collector under the act of 1820, for failing to pay over taxes.

7. The act of 1806, (Clay's Digest 243 § 3,) confers no power upon the Comptroller of Public Accounts to receive payments from a tax collector of the taxes collected by him; a payment to the Comptroller is therefore unauthorized and invalid.

8. An official bond executed by the tax collector of Mobile county before the passage of the act of February 5, 1846, which imposed a tax on steamboats, covers taxes collected by him under that act.

9. The sovereign power of the State only can confer upon the Comptroller the

authority to receive the public revenue from the tax collectors, or confirm a payment to him; no agent or officer of the State can do so.

10. The act of 1820 remains in full force as to all defaults or delinquencies of tax collectors occurring prior to the passage of the act of March 6, 1848, and gives fifteen per cent. damages, as well as interest, on the amount of the default.

11. When the motion is discontinued as to those defendants upon whom the notice has not been served, and continued as to the others, the former may appear at any subsequent stage of the proceedings, and their appearance will cure the discontinuance; and judgment may then be rendered against all the defendants.

ERROR to the Circuit Court of Montgomery.

Tried before the Hon. GEORGE GOLDTHWAITE.

This was a motion for judgment against a tax collector and his securities. The notice was as follows:

·Comptroller's Office, }
State of Alabama.    }    To Alexander C. Walker, tax collector of Mobile county, in said State, for the year 1846, and L. M. Harris Walker, Elizabeth Jones, George J. Bowie, and William M. Garrow, his securities:

Whereas, the said Alexander C. Walker, being tax collector of Mobile county and State aforesaid, for the year 1846, having failed to pay into the treasury of the State, within the time prescribed by law, the sum of twenty-nine hundred and ninety-eight $\frac{59}{100}$ dollars, it being the balance of amount of taxes collected by him while tax collector as aforesaid; and whereas, the said L. M. Harris Walker, Elizabeth Jones, George J. Bowie, and William M. Garrow, are the securities of the said Alexander C. Walker upon his official bond, as tax collector for said county of Mobile and year aforesaid, which said bond is for the sum of eighty thousand dollars, bears date on the eighth day of November, 1845, and is payable, conditioned and approved as is required by law.

You are, therefore, hereby notified that, at the next term of the Circuit Court of Montgomery county, to be holden on the sixth Monday after the fourth Monday in September, 1848, I shall, by the Attorney General of said State, move for judgment against you in favor of Reuben Chapman, Governor of said State, for the sum of twenty-nine hundred and

ninety-eight $\frac{99}{100}$ dollars, the balance so collected and not paid as aforesaid.     JOEL RIGGS, Comptroller of

Public Accounts for the

October 14, 1848.     State of Alabama.

The notice was returned executed on Elizabeth Jones, L. M. H. Walker and George J. Bowie, against whom the motion was submitted at the above term, and a motion to quash the notice then made, which was overruled by the court. The defendants, on whom the notice had been served, craved oyer of the bond, and demurred to the notice.

The bond was in these words:

"Know all men by these presents, that we, Alexander. C. Walker, L. M. H. Walker, Elizabeth Jones, George J. Bowie, and William M. Garrow, are held and firmly bound unto Benjamin Fitzpatrick, Governor of the State. of Alabama, and his successors in office, in the penal sum of eighty thousand dollars, to be paid to the said Benjamin Fitzpatrick, Governor of the State of Alabama as aforesaid, or to his successors in office; to which payment well and truly to be made we bind ourselves jointly and severally, and our and each of our heirs, executors or administrators firmly by these presents. Sealed with our seals, and dated this the eighth day of November, in the year 1845.

The condition of the above obligation is such that, whereas, the above named Alexander C. Walker was, on the —— day of August, in the year 1845, by the legal and qualified voters in and of the county of Mobile, duly elected tax collector for said county of Mobile, to collect the county and State taxes, for the years 1845 and 1846, and which said election was duly proclaimed and made known by the sheriff of Mobile county.

Now, if the said Alexander C. Walker shall faithfully perform the duties required of him while in office, then this obligation to be void; otherwise to remain in full force and effect.     A. C. WALKER, [Seal.]

    L. M. HARRIS WALKER, [Seal.]

(Signed)     ELIZABETH JONES, [Seal.]

    G. J. BOWIE, [Seal.]

    WM. M. GARROW.

Approved:     JNO. A. CUTHBERT, J. C. C. M. C."

The demurrer was overruled, and the defendants pleaded to the notice.

The bill of exceptions shows, that on the trial, the plaintiffs produced an account certified by the Comptroller, showing a balance due against the tax collector, December 14, 1846, for $2998 89. The first item on the credit side of the account was for $20250 00, by partial payments, 8th January, 1847; and one of the items on the debtor side was for $1585, for licenses in 1846; and another was for steamboat taxes for 1846, $722. 63. The defendants insisted that such last item was not a legitimate charge in this proceeding against the tax collector or his securities, which objection was overruled. The defendants introduced two receipts of Jefferson Van Dyke, comptroller of public accounts, both dated 8th January, 1847, the first for $1585, received from A. C. Walker "in full payment for the licenses issued in Mobile county for the year 1846," and the other for $21,063, received from A. C. Walker as a "partial payment of the taxes due from the county of Mobile for the year 1846;" also a receipt of J. J. Ormond, as attorney and agent for the State of Alabama, acknowledging that he had received said receipts of Van Dyke, to be used as evidence in a suit then pending in the Circuit Court of Tuskaloosa county against said Van Dyke, dated 22d February, 1851; and proved that said first item for $20250, was part of the sum mentioned in the larger receipt of said Van Dyke, and that the remainder of the sum in that receipt, had been recovered by the State against Van Dyke. It was also in evidence that the receipt for $1585, had not been used in the suit against Van Dyke, for the reason that such suit was commenced by attachment for a sum certain, and that the other receipt, exclusive of the one for $1585, made up the sum sued for and recovered. The defendants insisted that the plaintiffs were not entitled, upon the account presented, to the sums paid to Van Dyke, and that if he had received the sums specified in said receipts, the defendants were entitled to a credit therefor; which position was overruled, the court deciding that no payment to Van Dyke was good, unless the money had gone into the State treasury, or that the same had been sued for and recovered of him by the State; and that the procurement of the

evidence with the view to sustain a suit, and the abandonment of the intention, would not entitle the defendants to a credit.

The court also decided that the special tax for $722,63, was recoverable of the defendants, and that the plaintiffs were entitled to interest at the rate of eight per cent. from the date of the account; to. all of which decisions the defendants excepted.

The judgment entry recites, "that the defendants, Alexander C. Walker, L. M. Harris Walker, Elizabeth Jones, George J. Bowie, and William M. Garrow, appeared by their attorney."

The refusal to quash the notice, the overruling the demurrer to the same, the rulings of the court upon the trial, and the rendition of the judgment against all the defendants whose names are recited in the judgment, are assigned for error in this court.

JNO. A. CAMPBELL and P. HAMILTON, for plaintiffs in error:

1. The notice should have been set aside upon motion, and the demurrer to it should have been sustained for the causes set forth. 3 S. & Port. 15.

2. The Circuit Court at Montgomery had no jurisdiction of the motion. Clay's Dig. 244 § 16; Acts of 1848.

3. The statute of limitations barred the notice. 2 Cranch 336; 1 Gallison 397; 1 Ala. 605, 684.

4. The court erred in allowing interest. 2 Leigh R. 393; 1 Ala. Rep. 605; 9 Dana 70, 75.

5. The court erred in refusing to allow the payments to the comptroller. 9 Cranch 212; 3 John. Ch. R. 416, 422; Addison on Con. 407.

6. The court erred in its decision upon the steamboat tax. 9 Wheat. 720; 6 Wend. 460; 1 Scam. 35; 3 Scam. 122; Acts of 1846

7. The act of the State's agent amounts to an acceptance of Van Dyke as a debtor. 3 John. Ch. R. 416; Addison above cited; 17 Vermont R.

M. A. BALDWIN, Attorney General, with whom was A. MARTIN, contra:

The notice conforms to former precedents, is explicit and

sufficient. Armstrong & Pinkston v. The State, Minor 160; Nabors v. The Governor, 3 Stew. & Por. 19.

This notice is not strictly a process, or not such a one as is required by the constitution to be in the name of the State. Ib.

The action is properly brought in the name of the Governor for the use of the State. Mayberry and others v. The State, 1 Stew. 266; Nabors et al. v. The Governor, 3 S. & P. 18.

Van Dyke had no authority to receive the money due the treasury. He is prohibited from receiving it; and a payment to him cannot protect the collector or his securities. Clay's Dig. 243 § 3.

The statute directs the comptroller to examine, settle, and audit the accounts of all public debtors, collectors, &c., to call upon such to render accounts, and pay into the treasury all sums and balances due. Clay's Dig. 243 § 3.

The statute of Congress directs the comptroller, "to provide for the regular and punctual payment of all money which may be collected." 1 United States statutes at large 66 § 3.

The conclusion attempted to be drawn from the case of United States v. Giles, 9 Cranch 212, 240, is not supported by any analogy in the two cases.

According to act of Congress, the comptroller was required to provide for the regular and punctual payment of all moneys collected.

According to the laws of this State, the comptroller was required to call upon debtors to pay into the treasury.

No prosecutions had been commenced v. Van Dyke, and until this had been done, he had no authority, according to the case of 9 Cranch 240, to direct the payment of the money.

The only instances of the comptroller's authority to receive money, are conferred by special legislation, and are exceptions to the general rule.

The undertaking of Walker and his securities was prospective, and the receipt of the taxes against steamboats, under acts of 1846, page 11, were covered by their bond. Aikin's Digest 36.

The cases read by the plaintiffs in error were ruled under a different state of facts, and do not apply.　9 Cranch; Scam. Rep.; 6 Wendell.

The letter of Van Dyke proves nothing more than, in connection with his receipts, that he received money without any authority, and payments to him afford the comptroller no protection; the law prohibited the receipt of money by him.

Proceeding in this case was instituted 14th October, 1848.

The action against Van Dyke was commenced 27th July, 1850.

Judge Ormond's receipt bears date February 22, 1851.

The State did not affirm the act of Walker by suing Van Dyke for any thing, at least beyond the amount of this claim recovered of Van Dyke; no part of the recovery against Van Dyke was embraced in this judgment.　Hunter v. Prinseps, 10 East 378, 394.

The suit brought by The State v. Van Dyke, was brought without reference to his liability growing out of the transaction of this case.

The defendants all appeared by their attorney, and were properly before the court.　Gibbons v. Lane, 3 Porter 267.

The court had ample jurisdiction.　Acts 1848, page 8 § 13; ib. 14 § 12.

Delinquent tax collectors shall be liable to damages and interest.　Clay's Dig. 245 § 18; Acts of 1848, p. 8 § 19.

The act of 1820, (Clay's Dig. 245 § 18,) giving interest and damages for defaults of tax collectors, is unrepealed as to all cases of default arising before the passage of the act of 6th of March, 1848, page 8, 9, § 19, imposing a different penalty. The provisions of the last law apply to the default of payments herein (therein) required, but do not apply to former defaults, and both interest and damages were recoverable in this case.

GOLDTHWAITE, J.—The objections to the notice for the want of sufficient certainty cannot be sustained.　By the act of 1820, under which these proceedings were instituted, it is provided, "that when any collector of the revenue shall neglect to pay the same into the treasury by the time he is

required by law, it shall be the duty of the Comptroller of public accounts immediately to institute suit for the recovery of the same, by notifying such delinquent collector, his security or securities, that he will, by the Attorney General, on such a day as shall be named in the notice, move for judgment against him or them, for the amount due the State." Clay's Dig. 244 § 16. If the notice complies in substance with the form prescribed by the statute, it is sufficient.

In the present case it is given by the Comptroller, and alleges that A. C. Walker was the tax collector of Mobile county, for the year 1846; that he failed to pay into the State treasury, within the time prescribed by law, a specified amount, which was the balance of the taxes collected by him as such collector; that the other defendants were his securities upon his official bond, the date and amount of which are stated, and which, it is alleged, was payable, conditioned and approved as required by law. The notice also states the term and the court at which the motion for judgment will be submitted; also, that it will be made by the Attorney General, in favor of the Governor, for the use of the State. It contains every requisite prescribed by the act referred to, and although the facts are not stated with that degree of technical precision and fullness which is necessary in declarations, they are stated with sufficient certainty to fully advise the defendant of the grounds upon which the motion will be made, and to enable the court to pass upon their liability. Although the notice is substituted in the place of the declaration, it is unnecessary for it to contain every matter which the declaration should contain. In motions against the sheriff and his securities, it has never been the practice to describe with particularity his bond, but it is referred to simply as his official bond. As the law prescribes the form of the bond, and as the record must show every fact necessary to sustain the judgment and jurisdiction of the court, we can see no good reason for requiring a more particular description than is given by the notice. The object, as we apprehend, which the legislature had in view in authorizing judgments to be rendered, on notices of the character presented by the statute, was, in some measure to divest the proceedings of the forms and technicalities which encumber the common law action, and

to substitute in its place a less formal, as well as a more expeditious remedy. Such was in effect the construction given by this court at a very early day to statutes conferring remedies of a similar character, (Lyon v. The State Bank, 1 Stew. 442;) and the practice since then has been in conformity with that decision.

The notice also shows, that the motion for judgment would be made in favor of the Governor, for the use of the State; and so far as that point is concerned, avoids the objection which was held fatal in the case of Nabors v. The Governor, 3 S. & P. 18.

In relation to the constitutional requisition that all process shall be in the style of the State of Alabama, it is sufficient to observe, that if it was intended to apply to notices of this description, we think it complied with by the use of the words prescribed, in the commencement of the notice.

Neither can the objection which is taken to the condition of the bond be sustained. The statute (Aikin's Dig. 36, § 6) prescribes, that the bond of the tax collector shall be conditioned for the faithful performance of the duties required of him while in office, which is in legal effect the condition of the bond in the present case. It is true, that incorrect recitals in the condition may sometimes vitiate the bond, as in case of the misdescription of a judgment in a writ of error or injunction bond, (Carey v. Barclay, 3 Ala. 484; Wiswall v. Monroe, 4 Ala. 9;) but where a statutory bond merely superadds a condition which the statute does not require, its validity even as a statutory bond is not affected by the surplus matter, which will be rejected as surplusage. Dixon v. United States, 1 Brock. 177; United States v. ——, 1 Brock. 195; Woods v. The State, 10 Miss. 698; Shunk v. Miller, 5 Barn. 250; Howie v. The State, 1 Ala. 113. In the present case, however, there is no condition which is not required by the statute superadded, but it is simply recited that the party was elected, in August, 1845, tax collector of the county of Mobile, to collect the county and State taxes for the years 1845 and 1846. The law requires the tax collectors to be elected annually, and it is made his duty to collect the taxes for the next succeeding year, (Clay's Dig. 568, § 59;) and construing the bond with reference to the law, under the influence

of the decisions we have cited, the words "to collect the county and State tax for the years 1845 and 1846," may be rejected as surplusage.

It is also insisted on the part of the plaintiffs in error, that the Circuit Court of Montgomery county had not jurisdiction of the motion; and upon this point we think the view taken by the counsel in relation to the act of 6th March, 1848, (Acts 1847–8, p. 8, § 18,) is correct, and that upon its face it is clear that it was intended to apply only to defaults committed under that act, and not to those which were committed before its passage; yet we think the jurisdiction of the court may be sustained under the act of 3d March, 1848, for the reorganizing of the Comptroller's and Treasurer's departments, the 12th section of which provides, "that all notices issued by the Comptroller of public accounts against any delinquent collector of the revenue, or against any other person accountable for the public money, his security or securities, shall be made returnable before the Circuit Court of the county designated by law for the sitting of the General Assembly; and any special court called for the purpose aforesaid, shall be held as above provided. Acts 1847–8, 114. This section was evidently drawn with reference to the act of 1820, (Clay's Dig. 244, § 16,) which conferred jurisdiction on the Circuit Court of Tuskaloosa county, and must have been intended to embrace cases of defalcation which originated under that act, and to provide especially in such cases, for the exercise of jurisdiction of the Circuit Court of the county in which the General Assembly holds its sessions. The jurisdiction is, if possible, still clearer under the act of 29th February, 1848, which provides "that all motions or actions required by the existing laws to be instituted by the Attorney General in the Circuit Court of Tuskaloosa county, shall hereafter be instituted and brought in the courts of Montgomery county." Acts 1847, 141. This act appears to have escaped the attention of the counsel upon either side, but its language is too plain, and its bearing upon the question at issue too decisive, to require any comment from the court. Under either of the acts last referred to, we are of opinion that the court in which the proceedings were instituted acquired jurisdiction.

In relation to the argument which is drawn from the use of

the term "immediately," in the statute of 1820, (Clay's Dig. 244, § 16,) if it is intended as an objection to these proceedings on the ground that they were commenced at too late a period, it is sufficient to observe, that the rule is, that a statute specifying a time within which a public officer is to perform an official act, regarding the rights of others, is directory merely, as to the time within which the act is to be done, unless from the nature of the act to be performed, or the phraseology of the statute, the designation of the time must be considered a limitation on the power of the officer. People v. Allen, 6 Wen. 486; Pond v. Negus, 3 Mass. 230. If this rule is correct in its application to individual rights, a fortiori, should it prevail in relation to public interests, and in that aspect applies in its full force in the present case. The requisition that the proceedings should be instituted immediately after the default, was intended simply as directions to the Comptroller, and not in any wise to affect the proceeding or the subject of it.

It is also insisted, that this proceeding is barred by the statute of limitations, (Clay's Dig. 481, § 34,) which provides, that no person shall be prosecuted for any fine or forfeiture under a penal statute, unless the prosecution for the same be instituted within twelve months from the time of incurring the fine or forfeiture; but it is clear that this statute does not apply to the present proceeding, which is not a prosecution for a fine or forfeiture, but simply a mode provided by the legislature for the purpose of recovering from the officer in default, the money in his hands. The statute under which these proceedings are instituted is, it is true, of a penal character, because it gives damages against the party; but the act of limitations referred to must be construed to apply to those cases in which the fine or forfeiture only is sought to be recovered. Langdon v. Fire Department, 17 Wend. 234. It certainly was not intended to defeat a remedy in which the damages were incidental merely.

Another question which is presented by the record is, as to the validity of the payments made by Walker to the Comptroller on the 8th of January, 1847. By the act of 1805, it is made the duty of the Comptroller " to examine, settle and audit the accounts of all public debtors, collectors of any tax

or revenue payable to the State treasurer; to call upon all such debtors to render accounts, and to pay into the treasury all sums and balances due, and on their failure so to do, to institute proceedings against them at law." Does this clause confer upon the Comptroller the authority to receive from the tax collector the revenue which he has collected for the State? In order to decide this question correctly, it may be necessary to consider the duties of the other officers connected with the financial department of the State; for, if it should appear that the legislature has required these payments to be made to a different officer, it would seem to be unnecessary to confer the same authority upon the Comptroller, and would thus furnish a strong argument against giving it by implication merely. There is also, we think, an obvious policy, in those cases in which the public interests will permit, in separating the duties and authority of the officers of the same government; and when this has been done, when the legislature has selected a particular officer, and invested him with the authority to receive the public revenue from the collecting officers of the State, we know of no principle of law, no sound or valid reason, which would authorize us to hold, that the same authority was also intended to be conferred upon another officer to whom it was not expressly given, and to the discharge of whose duties it was entirely unnecessary.

The State treasurer is required to receive and keep the moneys of the State, (Clay's Dig. 576, § 6,) and the law also expressly requires the tax collectors to pay into the public treasury all moneys due from them. Clay's Dig. 365, § 42. This, we should suppose, was sufficiently explicit as to the duty of the tax collector to make his payments to the State treasurer; but by a reference to the clause under which it is insisted the power is by implication conferred upon the Comptroller, it will be seen that its framers could not have contemplated the payments being made to that officer. He is to audit the accounts of the collector of the revenue, " which are payable to the State treasurer," and he is to call upon the public debtors "to pay into the State treasury all balances due," &c. The legislature, in all the general laws connected with the finances of the State, seem fully to have recognized the principle to which we adverted, as regards the separation

of the powers and duties of officers. The Comptroller of public accounts is but the State auditor; and while he has been invested with the duty of examining and settling the accounts of the State, the legislature have conferred upon him no authority to receive or keep the public funds, or to receive payment of the public dues. Those duties are by law confided to the State treasurer; and the line which divides the duties and powers of the two officers, is clearly thus marked out and defined.

The case of the United States v. Giles, 9 Cranch, is the one which is principally relied on to sustain the payment to the Comptroller. In that case, Giles had paid the money which as marshal he had collected, on an execution in favor of the United States against a public debtor, to the district attorney, with the assent of the comptroller of the treasury. The question was as to the validity of this payment. The act of Congress gave to the comptroller authority " to provide for the regular and punctual payment of all moneys which might be collected, and to direct prosecutions for all delinquencies of officers of the revenue, (U. S. Stat. at Large, vol. 1, 66;) and the court held, that the power to direct the prosecution conferred the authority to direct its proceeds; but if the law had required that the proceeds when collected by the marshal should have been paid over to the treasurer of the United States, the comptroller would have had no authority to have changed the law, and to direct the payment to have been made to any other person, and on such a case we apprehend that the decision of the court would have been different. But if it was conceded that the Comptroller, by virtue of the power which is given him under our statute, to institute proceedings against public defaulters, can direct the payments resulting from such proceedings, no authority is conferred upon him under this clause to receive the payments before the institution of the suit. We all concur in the opinion, that the payment was unauthorized and invalid.

One item going to make up the indebtedness of Walker, was for the tax upon steamboats, originating under the act of 5th of February, 1846, and it is urged on the part of the plaintiffs in error, that the bond on which these proceedings were instituted, being executed before the passage of the act referred to, does not cover this liability.

The act provides for the levying a tax on all steamboats navigating the waters of the Alabama, Tombigbee, Black Warrior and Tennessee rivers, in this State; for its collection by the assessors of Mobile, Lauderdale, and Morgan counties; and that when collected it should be paid over to the tax collectors of those counties respectively. Acts 1845–6, 3 § 3. The bond was approved on the 8th of November, 1845, at which time there was no law in force which required any tax to be levied upon steamboats.

As all contracts are governed by the laws existing at the time they are made, the determination of the question presented must depend upon the construction of the statute under which the bond was given, which measures the extent of the liability of the obligors. The object of all official bonds is, to afford security to the public against the defaults which may be committed by the officer during his term of office; as these duties, and especially those which are connected with the revenue department, must necessarily be varied from time to time, as the interests, policy or wants of the State may require, it is impossible to suppose, unless forced to the conclusion from the character of the duties, or the phraseology of the statute, that the legislature could have intended to restrict the force of the obligation to those duties only, which devolved upon the officer at the time of its execution and approval. But, independent of these considerations, we think the condition prescribed by the statute in relation to the bonds of tax collectors, sufficiently expressive upon this point. This officer is required to give bond in double the amount of the taxes of his county, to be estimated by the judge taking the same, conditioned for the faithful performance of the duties required of him while in office. Aik. Dig. 36 § 6. There are not only no words limiting the application of the condition to past laws, but the language used clearly implies that the bond was intended to extend to all duties that should be required of the officer during his continuance in office, thus making the obligation prospective in its operation as to laws imposing additional duties connected with the office.

The view we have taken upon this branch of the case is, we think, clear upon principle, is sustained by authority—

White v. Fox, 22 Maine 341; Bartlett v. The Governor, 2 Bibb 586; Kindle v. The State, 7 Blackf. 586; Governor v. Ridgway, 12 Illinois 14; and is not within the influence of any of the cases which have been cited by the counsel for the plaintiffs in error.

In the case of The United States v. Kirkpatrick, 9 Wheat. 720, the question arose upon a bond given for the faithful discharge of the duties of his office, by a collector of direct taxes, appointed under the act of Congress of 22d July, 1813; and the court there held, that the operation of the bond as to the liability of the sureties, was to be restricted to the duties exacted by the collection acts passed antecedent to the date of the obligation; but the decision turned upon the construction of those acts, from which it appeared that a permanent and continuing liability for duties under laws passed subsequently to the execution of the bond, could not have been contemplated by the original act under which the appointment was made; while in the case at bar, a just construction of the act prescribing the condition of the bond, requires, as we think, its extension to laws passed subsequently to its execution.

It may, perhaps, be questionable, whether the legislature contemplated the discharge of duties by the officer which were inappropriate to, and disconnected with his office; but upon this point we express no opinion, as we are satisfied that the duties imposed by the act of 5th February, 1846, upon the tax collector.of Mobile county, were such as may properly be regarded as appropriate to his office. A new tax was to be levied, and it will not be questioned that the collection or receipt of this tax should be devolved upon the tax collectors; and if the property taxed was peculiar to Mobile county, the duties of its collection should have been imposed upon the officers of that county. In this case, the property was transitory in its nature, and it was not only competent, but proper, for the legislature to impose the duties appertaining to the collection of the tax, upon the officers of those counties which, from their position with regard to the property taxed, would be most likely to ensure the object for which the statute was passed.

As to the ratification by the State of the payments made

by Walker to Van Dyke: The authority to receive the public revenue, could only be conferred upon the latter by law; and if the law did not confer this authority, no officer or agent of the State could do so; and if no officer could authorize the payment, none could afterwards confirm it. It could be done only by the sovereign power of the State. The People v. The Phœnix Bank, 24 Wend. 431; Delafield v. The State of Illinois, 2 Hill 159. The fact, therefore, that an agent of the State, without authority of law to confirm the payments to Van Dyke, received his receipts for the purpose, and with the intention of using them as evidence in a suit against him, could not amount to a ratification of the payments.

In relation to the question of interest: This proceeding was under the act of 1820, the third section of which provides, "that in every case of delinquency, the court trying the cause shall grant judgment for the amount due the State, together with fifteen per cent. damages, and interest at the rate of eight per cent. per annum, from the day on which the same became due." Clay's Dig. 245 § 18. The provisions of the act of 6th March, 1848, are prospective in their operation, and apply only to defaults under that act; the act of 1820 remaining in full force as to all prior defaults or delinquencies. Under that act, as we have seen, fifteen per cent. damages, as well as interest, should have been given, and the error of the court was in favor of the defendants below upon this point.

The only remaining question to determine is, whether the court erred in rendering judgment against all of the defendants named in the notice. The record shows that, at the return term of the notice, the motion was submitted against three of the defendants, the others not having been found, and was continued on the application of these defendants; that it was regularly continued until the Fall term, 1851, when a trial was had, the judgment entry showing, by a recital in the body of the judgment, that all the parties to whom the notice was directed appeared. The motion indicated by the notice was in law discontinued as to the parties not served, but these parties had the right to introduce themselves into court at any subsequent stage of the proceedings, and by so

doing, the discontinuance was cured. Wheeler v. Bullard, 6 Port. 352.

This disposes of all the points raised upon the record, and there being no error in the proceedings, the judgment is affirmed.