# REPORTS

OF

## CASES ARGUED AND DETERMINED,

### JUNE TERM, 1842.

---

## WISWELL ET AL v. MUNROE.

1. A bond given to obtain an injunction in obedience to the fiat of the Chancellor will not operate as a *supersedeas*, or have the force and effect of a judgment upon a dissolution of the injunction, if it describe a different judgment from that sought to be enjoined by the bill.
2. When a cause is carried to the Supreme Court by writ of error and execution superseded by bond, the judgment of the Court below is merged in the judgment of affirmance of the Supreme Court.
3. A bond executed to obtain an injunction of a judgment affirmed in the Supreme Court, which described only the judgment of the Court below, will not operate as a supersedeas, or have the effect of a judgment on a dissolution of the injunction.
4. A bond so executed as to enjoin a judgment at law, has the force and effect of a judgment upon a dissolution of the injunction, without any order by the Chancellor to that effect.
5. The statute which requires the Register to certify to the law court the fact that an injunction has been dissolved, is *mandatory* only, and the failure or refusal of the Register to certify the fact, will not prevent the plaintiff at law from suing out execution on the injunction bond.

APPEAL from the Chancery Court at Mobile.

This was a petition filed in the Chancery Court by the appellee, against the appellants.

The record discloses the following facts:

At the February Term, 1838, of the County Court of Mobile, Denys Casey & Co. recovered a judgment against Charles Cullum for $4,702 44.

2

Cullum prosecuted a writ of error to the Supreme Court upon this judgment, giving Wiswell as his surety, which was affirmed with damages at the January Term, 1839, and an execution issued against Cullum and Wiswell on that judgment.

Cullum then filed his bill in Chancery, setting forth the rendition of the judgment in the County Court, its affirmance in the Supreme Court, the execution thereon, and, for causes set forth in the bill, prayed an injunction against the plaintiff in the judgment. The *fiat* of the Chancellor is, that an injunction shall issue according to the prayer of the bill, upon bond being executed, &c.

The bond was executed by Cullum and Munroe, as his surety, and recites the judgment of the County Court alone, making no reference to the affirmance in the Supreme Court. The condition is, " Now, therefore, if the said Cullum shall pay and satisfy all damages that the said Casey & Co. shall sustain by the wrongful suing out of said injunction, and abide such decree as shall be made in the premises, then this obligation to be void," &c.

At the fall term of 1839 of the Chancery Court, this bill was dismissed by Chancellor Peck for want of equity. From this decree Cullum prosecuted a writ of error to the Supreme Court, and at the July Term, 1840, of that Court, the cause was reversed and remanded; and at the May Term, 1841, of the Chancery Court a decree was again rendered dismissing the bill, and declaring that the " injunction bond have the force and effect of a judgment;" which was ordered to be certified to the court of law.

Thereupon Munroe, the surety in the injunction bond filed his petition, setting forth the above facts, and insisting that the injunction bond was not taken pursuant to the fiat of the Chancellor, and therefore did not operate as a supersedeas or injunction of the proceedings at law, because the judgment described in it was a judgment of the County Court, and not of the Supreme Court, as shown by the bill; that Wiswell was solvent, and that there was a judgment against him in the Supreme Court, upon which he was fixed.

The prayer of the petition is, that all further proceedings on the injunction bond be suspended, and the certificate heretofore made be recalled.

Upon this petition the Chancellor made an order, granting the prayer of the petition, on condition that bond be executed, &c.

At the April Term, 1842, of the Chancery Court at Mobile the following decree was made:

" In this case, on an examination of the records referred to in the petition, I find the allegations of the petition to be true in fact, and am of opinion that the petitioner, Hugh Munroe, is entitled to the relief he seeks. It is therefore ordered by the Court, that the order and decree pronounced at the last Term, in the case of Cullum v. Casey and others, as stated in the petition, be modified and annulled, so far as said order and decree gives the force and effect of a judgment to the injunction bond, and that the certificate, certifying the said order and decree, be revoked to the same extent, and this order be certified," &c.

At the same Term, Wiswell filed an affidavit, praying a rehearing of the petition of Munroe, alledging that by the mistake of his counsel he was not heard.

Wiswell afterwards filed his answer to the petition, insisting that the injunction operated on the judgment of the County Court, and that such was the effect of the order of the Chancellor. He further insists that the decree giving to the bond the force and effect of a judgment was a final decree, and could only be examined, if at all, upon a bill of review. He refers to, and makes a part of his answer, the proceedings in the Chancery suit.

Upon the hearing, the Chancellor affirmed the decree previously made on the petition, setting aside so much of the decree of a former Term as declared that the injunction bond should have the force and effect of a judgment.

From this decree the defendants prayed and obtained an appeal, on condition of executing bond, &c.

The bond was executed by Wiswell, with Moses Waring as his surety.

The errors assigned are—

1. The petition should have been dismissed.

2. The relief sought for by the petition should not have been granted.

3. The injunction bond was valid and should have been enforced.

MR. DARGAN, for appellant.

The only remedy to obtain the relief sought was a bill of review. [2d Smith's Ch. P. 50; 1 Hoff. C. P.; 7th Paige 382.] But the relief here sought could not be granted by bill of review, as this is not what is meant by an error apparent on the face of the decree; and the bond executed by the appellee, as the surety of Cullum, was a substantial, if not a literal, compliance with the *fiat* of the Chancellor, as the judgment of the Supreme Court merely affirmed the judgment of the County Court.

The parties to the bond are estopped from denying that there was such a judgment as they have described in it; especially as the bond produced the effect it was designed to have. [9th Cranch, 36.]

The petition was a motion to alter a decree; it was not a bill—and, therefore, all persons who were parties to, or had an interest in the decree, and the cause in relation to which the motion was made, can appeal from the order or decree granted thereon.

CAMPBELL, contra.

The appeal is prosecuted by Wiswell and Cullum, as appears by the appeal bond, citation, &c. These persons were not parties to the proceedings in the Court of Chancery, and are not properly before this Court. Casey & Co. alone have an interest in this bond, and Wiswell had no right to intervene, and should not have been heard by the Chancellor. The appeal should therefore be dismissed. Munroe was not precluded by the decree of the Chancellor from an inquiry into the effect of his bond. The bond, though connected with the cause, is not a part of the decreee, but a mere security for its performance, and, therefore, collateral to it. Being collateral to the decree, and forming no part of it, a bill of review would not lie on account of the declaration of its legal effect by the Chancellor.

The validity of the bond on the part of the surety cannot be examined in this Court, until it has been directly brought before the Court below for adjudication.

The cases in which a bill must be filed, or the parties can

have relief by petition, are not always distinguishable; much depends on the circumstances of the case, and much is left to the discretion of the Chancellor. [10th John. Rep. 530; 2d Paige, 26.]

The cases in which a decree may be corrected, on petition, are numerous. [12th Vesey, Jr. 458; 7th Paige, 382; Cooper, 134; 4th Mad. 464.]

This is not a decree settling the equities of the parties, but relates to the execution of the decree, and is within the control of the Court at any time. The persons who can file a bill of review are parties to the suit, or privies in title or estate.

In Admiralty proceedings a stipulator cannot prosecute an appeal or writ of error. [1 Gal. 227; 1 Mason, 431.]

Where one is interested in a single question, not affecting the merits of the decree, petition is the appropriate remedy.

As to the effect of the bond executed by Wiswell, it is clear that the judgment of the Court below is merged in the judgment of this Court, and that all subsequent proceedings are founded upon it. The Clerk of the Court below is the ministerial officer of this court, and acts upon the evidence furnished by it, and not upon the judgment of his own court. [5th Mass. 376; 4 ib. 462; 13 ib. 266; 9th Cowan, 227.]

Is Wiswell discharged by the injunction bond? After judgment against a surety, or bail, the character of surety is at an end. [5th John. C. 315.] Wiswell was bound by the judgment, and could not have been received as a surety to the injunction bond; it follows, therefore, that the injunction bond is invalid, because it does not apply to this judgment. [Hardin's Rep. 315.] The case in 4th S. and P. 269, does not militate against this view, as it was decided before the passage of the act of 1830, authorizing the rendition of judgment against the sureties in an appellate court. [See, also, 5 H. and J. 234.]

If this bond is confined to the judgment of the County Court, nothing was enjoined, and the Court has only to look at the injunction to see that the judgment in the Supreme Court has not been affected.

ORMOND, J.—The facts of this case are, briefly, that Denys Casey & Co. recovered a judgment in the County Court of Mobile, against Charles Cullum; from which the lat-

ter prosecuted a writ of error to the Supreme Court, with the appellant Wiswell as his surety, where the judgment was affirmed. Cullum then filed his bill in Chancery, praying an injunction of the judgment at law, which was granted, and he thereupon gave bond, with the appellee Munroe as his surety. The bill was dismissed—the injunction dissolved, and the injunction bond directed to have the force and effect of a judgment, and that the Register certify the same, together with a transcript of the bond, to the court of law.

At the succeeding Term, Munroe filed his petition, setting forth that in the bond executed by him as the surety of Cullum to obtain the injunction, the judgment to be enjoined was described as a judgment of the County Court instead of a judgment of the Supreme Court, in which it had been affirmed,—that therefore the bond did not operate as an injunction or supersedeas to the judgment,—and prays a revocation of that portion of the decree which orders the bond to have the force and effect of a judgment.

The Chancellor, on the hearing, set aside so much of the decree of the last Term as gave to the bond the force and effect of a judgment; from which Wiswell prayed an appeal, which was granted.

Without, at this time, entering into an examination of the sufficiency of this bond, we will proceed to the consideration of the question, whether a decree is necessary to give to an injunction bond the force and effect of a judgment after a dissolution of the injunction.

By the act of 1826, [Aik. Dig. 291,] it was enacted, "that every bond executed for the purpose of obtaining an injunction, shall, on the dissolution of the said injunction, have the force and effect of a judgment; and it shall be lawful for the party or parties whose judgment may have been enjoined, to take out execution against all the obligors in the bond, for the amount of the judgment which shall have been enjoined, together with lawful interest thereon, and also the costs incurred in and about the said Chancery proceedings." It seems perfectly clear that this is a legislative declaration of the effect of the bond when executed, and did not contemplate any action of the Court to give it the "force and effect of a judgment." That consequence attached to it the moment the injunction

was dissolved. From that time the bond became, in effect, a judgment, upon which the party whose judgment had been enjoined, could immediately, and without application to the Court, as in the case of any other judgment, sue out execution; and an order of the Chancellor, upon the dissolution of an injunction, that such bond should not have the force and effect of a judgment, would be as nugatory as his decree that it should have such an effect, would be unnecessary.

These propositions are indeed so self-evident, that no argument can make them plainer, were it not for the supposed change in the law, by the 6th section of the act to regulate the practice in the Courts of Chancery, passed January, 1841. [Meek's Sup. 65.] Which provides, "that whenever an injunction is ordered to be dissolved, either with or without the six per cent. damage, and *the injunction bond is ordered to have the force and effect of a judgment*, it shall be the duty of the Register to certify the same, together with the transcript of the bond, to the court of law, to the end that the plaintiff at law may have execution on the injunction bond, as well as for the six per cent. damage, if any be awarded."

Was it intended by the Legislature, by this enactment, to confer on the Chancellor the power of declaring whether a bond executed for the purpose of obtaining an injunction to a judgment at law, should have the force and effect of a judgment or not, upon the dissolution of the injunction? We think such was not the intention of the Legislature.

If such an effect be given to it, it will be a repeal by implication, of the act of 1826, previously cited, which declares the legal effect of these bonds.

The well established rules of construction are, that the repeal of a law by implication, is never favored; and that if there be two affirmative statutes upon the same subject, the one does not repeal the other if both may consist together; and it is the duty of Courts to seek for such a construction as will reconcile both. [Warder v. Arelle, 2 Wash. 282.]

"A thing which is within the letter of the statute, is not within the statute, unless it be within the intention of the makers." [6th Bac. Ab. 385.]

The intention of the Legislature in the passage of this act, is sufficiently plain. Previous to the establishment of the

separate Chancery Courts, the functions of Common Law Judge and Chancellor being united in the same person, and the same person, as Clerk, having the custody of the records in Common Law and Chancery cases—upon the dissolution of an injunction, that fact being known to the Clerk, he immediately issued execution on the injunction bond. But after the separation of these Courts, some difficulty seems to have been felt—though certainly without any just cause as appears to us—in making known to the Clerk of the Law Court, the fact of the dissolution of the injunction. To obviate this difficulty, real or supposed, was the evident design of this section, which makes it the duty of the Register to certify the fact that the injunction has been dissolved, to the Clerk of the Court where the judgment was rendered, together with a transcript of the bond, that execution may issue thereon.

It is most unreasonable to suppose that the Legislature, intending to provide against a particular evil, and providing the appropriate remedy, should, at the same time, intend by indirection, to repeal the law which they were endeavoring to make more efficient. If it had been the design by that act to make such an important change in the law, as that injunction bonds should have the force and effect of a judgment, only in the event the Chancellor should so order and decree, it is impossible to suppose it would have been left to construction, and be carefully wrapt up in doubtful and ambiguous phrases.

We conclude therefore that such was not the intention of the Legislature, and therefore if within the letter of the law, is not within the statute.

It is certainly true, that where a law is plain and unambiguous it is binding on the Courts, and they cannot speculate on consequences. Such in our opinion is not the case here. Even the literal interpretation of the statute is satisfied by supposing the terms "ordered to have the force and effect of a judgment," to mean, ordered or directed by the *existing law*, to have the force and effect of a judgment. This construction is not, in our opinion, so strained and unnatural as to suppose the Legislature intended by this ambiguous phrase to change the law as it had existed almost from the foundation of the State Government, and for the certainty and unerring pre-

cision of the existing law, to substitute the opinion of the Chancellor.

It is laid down by C. J. Marshall, in the United States v. Fisher, [2d Cranch, 342,] that where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the Legislature be plain. Of the inconvenience to which the construction contended for would lead, this case affords a conclusive example.

In the case of Boren et al v. Chisholm, [3 Ala. Rep. 513,] we considered the effect of a decree of the Chancellor dissolving an injunction, and held that the right of the plaintiff to take out execution on the judgment at law, after a dissolution of the injunction, was not derived from the decree of the Chancellor, but was a right springing into existence upon the dissolution of the injunction. The Court say, " Besides, the issuance of an execution upon a judgment at law, suspended by an injunction of the Court of Chancery, cannot be said to be a proceeding under the decree dissolving the injunction. The injunction was a prohibition to issue the execution until the Chancellor could inquire into the complaint—its dissolution cannot, with propriety, be said to give power to issue the execution, but merely removes a temporary restraint to the exercise of a power which exists independent of the Chancellor."

This reasoning applies with full force to the injunction bond, to which the statute gives the force and effect of a judgment, and authorizes the plaintiffs in the enjoined judgment to issue execution thereon.

This right, thus given by the statute, cannot be defeated by the omission of the Register to certify to the law court the fact of the dissolution of the injunction. The sixth section of the act of 1841, is mandatory to the Register, and does not require the action of the Chancellor; and it would be strange if the omission of the Register to perform a mere ministerial act could affect a right secured by law. If the plaintiff should sue out execution improperly, either on a bond, which, for want of conformity to the bill, or to the *fiat* of the Chancellor, did not operate as an injunction and supersedeas—or prematurely before the injunction was dissolved—in either case the execution would, on application to the Judge of the Court out of which it issued, be superseded and quashed. And in the last men-

tioned case, the parties would also be liable to be punished by the Chancellor for a contempt.

It is no objection to this view of the case, that the injunction bond is on file in the office of the Chancery Court. The plaintiff in the enjoined judgment is the beneficiary of the bond, and would be entitled to a copy of it, from the Register, on demand.

This disposes of the entire case. When the Chancellor dissolved the injunction, the bond became, by operation of law, a statute judgment, if by its terms it operated to enjoin the issuance of an execution on the judgment at law, and whether it could so operate or not, was a question to be determined by the common law Judge. It results from this, that the petition of Munroe should not have been entertained by the Chancellor.

The question whether the bond executed by Munroe operated as a supersedeas to the judgment at law, has been discussed in the written arguments submitted by counsel, and it is proper that it should be decided, to put an end, if possible, to this very litigated case.

The bill filed by Cullum to obtain the injunction, describes the judgment obtained by Casey & Co. against him, in the County Court of Mobile, and states that it was carried by writ of error to the Supreme Court, where it was affirmed. The prayer of the bill is, that the "said judgment be perpetually enjoined, or that a new trial at law be granted to your orator," &c., and that an injunction may issue to said defendants, restraining them from proceeding any further to enforce their judgment at law," &c.

The Chancellor, by his *fiat*, directed " an injunction to issue according to the prayer of the complainant, enjoining the defendants from proceeding to collect their said judgment till the further order of the Court of Chancery," &c.

A bond for an injunction was executed by Cullum, with Munroe as his surety, in the penalty of $9,404 86, which is double the amount of the judgment obtained in the County Court.

The judgment which the condition of the bond recites as embraced by the fiat of the Chancellor is a " certain judgment against the said Cullum, in favor of D. Casey & Co. in the

County Court of said county, for the sum of $4,702 43, which judgment bears date the 14th February, 1838."

The act of 1826, [Aik. Dig. 258, §26,] provides that "in all cases in which the judgment, sentence, or decree of an inferior Court, shall be affirmed in the Supreme Court, it shall be the duty of said Supreme Court to render judgment against the security or securities on the bond executed on obtaining the appeal or writ of error in the same manner and for the same sum for which judgment shall be rendered against the plaintiff or plaintiffs, complainant or complainants, in the said Supreme Court; and it shall be the duty of the clerk of said Supreme Court to certify the judgment thereof to the Court from which the cause came, against both the principal and the surety or sureties; and it shall be the duty of the Clerk of the Court whose judgment or decree shall have been affirmed, immediately on the reception of the certificate, to issue execution returnable to the next Term of the said Court, against the person or persons against whom judgment shall have been rendered in the Supreme Court, and for the amount of said judgment, in pursuance of the certificate of the Clerk of the Supreme Court."

In our opinion, the necessary result of this enactment is, that the judgment of the inferior Court is, upon its affirmance here, merged in the judgment of this Court, where a new judgment is entered with different parties from the judgment as it existed in the Court below. After the affirmance here, and rendition of judgment against not only the original defendant, but jointly against him and his sureties, if the statute was silent against whom execution should issue, it would necessarily follow that execution must issue against all the parties to the judgment. But the statute contains an express direction to that effect, thereby removing all doubt that it was the intention of the Legislature that the judgment of the Court below, *superseded* by a writ of error bond, should, on its affirmance by this Court, *merge* in the judgment here rendered against the original defendant and his sureties. After the rendition of such judgment an execution issued on the judgment of the inferior Court could be quashed for irregularity.

From this examination, it appears that the bond executed by Cullum and Munroe in this case, did not operate as a supersedeas to the judgment obtained by D. Casey & Co. against

Cullum and Wiswell, in this Court, but, by its terms, was designed to supersede the judgment of the County Court, which judgment was then merged in the judgment of this Court, and upon which no execution could issue.

The *fiat* of the Chancellor must refer to the judgment of this Court, which was recited in the bill, and to enjoin which the prayer of the bill must refer, as, otherwise, it would be inoperative.

It results from this, that the bond executed by Cullum and Munroe not operating as a supersedeas, whatever may be its effect as a bond, at common law, cannot have the force and effect of a judgment upon a dissolution of the injunction, as that effect is only given to such bonds as *enjoin the judgment*, which was not the fact in this case.

Wiswell was improperly made a party to the petition filed by Munroe, but he was not prejudiced thereby, inasmuch as the Chancellor decreed costs against the petitioner. No notice has been taken of the question argued by counsel, whether the proceeding by petition to reform the previous decree of the Court was regular, or whether it should have been by bill of review, because, as has been shown, the first decree of the Chancellor in relation to the injunction bond was inoperative, and the final order of the Chancellor being correct, though unnecessary, must be affirmed at the cost of the appellant, who has brought the cause into this Court.