## JOHNSON vs. JOHNSON'S ADM'R.

[PETITION TO SET ASIDE ORDER FOR SALE OF DECEDENT'S REAL ESTATE.]

1. *Validity of order of sale of decedent's realty.*—An order for the sale of a decedent's realty in this case, founded on a petition which alleged that a sale was necessary for the purpose of making an equitable division among the parties interested, held void under the provisions of the act approved February 7, 1854, entitled "An act to regulate the sale of real and personal property by executors and administrators." (Session Acts, 1853-4, p. 55.)

2. *Void order of sale set aside.*—The probate court has power, and it is its duty, on a proper application being made, to set aside and vacate, at any time, an order for the sale of a decedent's real estate, which is void on its face, or shown to be void by the matters of record connected with it.

APPEAL from the Probate Court of Henry.

IN the matter of the ⋆ estate of Sarah M. Johnson, deceased, on the application of John D. Johnson and Charles E. Johnson to set aside an order for the sale of the real estate. The petition was filed on the 26th March, 1866 and sought to set aside and vacate the order of sale on the following grounds : "1st, because said lands are not accurately described in the administrator's application to sell the same ; 2d, because the ages of the heirs-at-law are not stated in said application ; 3d, because the residence of the heirs-at-law is not stated in said application ; 4th, because said application was heard and determined before the expiration of forty days after it was filed in the office ; 5th, because notice of the filing of said application, and of the day set to hear and determine the same, was not given as by law provided ; 6th, because the guardian *ad litem,* appointed to represent the minor heirs of said deceased on the hearing, did not deny the allegations in said application, as by law required ; 7th, because said house and lot was sold for a price greatly disproportionate to its real value ; 8th, because J. D. Johnson was not made a party to the

proceedings for the sale of said land, having had no notice of the filing of said application; 9th, because there was no necessity for a sale of said land at that time, said estate being free from debt; 10th, because J. M. B. Kelly, guardian *ad litem*, was not notified of his appointment as such guardian; 11th, because the evidence used on the hearing of said application was not such as the law requires, no commission having been issued, and the witnesses having answered the interrogatories without being sworn; 12th, because notice that the commission would issue was not served on the guardian *ad litem* ten days before the commission should issue; 13th, because a copy of the interrogatories was not served on said guardian *ad litem* ten days before the commission should issue."

The petition of the administrator, on which the order of sale was founded, and which was filed and sworn to on the 15th January, 1864, was in these words: "The undersigned, administrator of the estate of Sarah M. Johnson, deceased, represents unto your honor, that said deceased died seized and possessed of a house and lot, situated in the town of Woodville, Henry county. He further represents that the heirs-at-law of said deceased are, J. D. Johnson and Charles E. Johnson. He further represents, that a sale of said property is necessary for a fair, equal, and beneficial division among said heirs. Wherefore, he prays your honor for an order authorizing and empowering him to sell said property for said purpose."

The order made on the filing of the petition, the order of sale, the report of the administrator, and the order confirming it, are in the following words:

"Came this day, James Pynes, administrator of Sarah M. Johnson, deceased, and filed application, under oath, for the sale of a house and lot of said deceased, which is described in said application, according to law; giving the names and residence of the heirs-at-law of said deceased, and alleging that a sale of said property is necessary for a fair and equitable division among said heirs. And thereupon, it is ordered, that the 15th day of February next be set as a day to hear said application; that J. M. B. Kelly be, and he is hereby, appointed guardian *ad litem* for said

minors ; and that notice of this application, and the day set to hear the same, be given, by posting notices at the court-house door, and three other public places in said county, for three successive weeks before said day."

"February 15, 1864. Upon this, it being the day set to hear and determine the application of James Pynes, administrator of the estate of Sarah M. Johnson, deceased, for the sale of the lands of said deceased, came said administrator, and moved the court to grant his application ; and it appearing to the court that citation herein has been served upon J. M. B. Kelly, guardian *ad litem* of the minor heirs of said deceased, at least ten days before this day, and that notice has been given by posting notices at the court-house door and three other public places in said county, for three successive weeks before this day ; and the allegations of said application being sufficiently proven by the testimony of disinterested persons, taken upon interrogatories, which are filed of record ; and no sufficient objections being made : It is ordered, that said administrator may sell the said lands, after giving notice of the time and place of sale, by posting notices at the court-house door, and three other public places in said county, for at least thirty days, for cash, at Woodville, in said county, and make due return thereof to this court."

"The undersigned, administrator of the estate of Sarah M. Johnson, deceased, reports, that in pursuance of an order of said court, he proceeded, after duly advertising, and sold at Woodville, Ala., on the 29th day of December, 1864, for cash, the house and lot in said town, belonging to said deceased ; and at that same time and place, White Pynes, of said county, became the purchaser of the same, at and for the sum of eighteen hundred and forty dollars, and has paid to him said sum. Wherefore, he prays for an order confirming said sale, and authorizing him to make titles of said land to said purchaser, according to law."

"February 22d, 1865. Upon consideration of the foregoing report, it appearing that said sale was fairly and legally made, and that said land sold for a sum not greatly disproportionate to its real value, and that the purchase-money has been paid : It is ordered that said sale be con-

16

firmed, and that said administrator be authorized to make titles of said land to said purchaser, according to law. It is further ordered, that said report be recorded and filed."

The record also contains what purports be "interrogatories to be propounded to William Wood and J. M. Bowdon, the answers to which, when taken, are to be read in evidence before said court, upon and in behalf of an application of James Pynes, administrator of Sarah M. Johnson, deceased, to sell lands for division." The interrogatories are these; " 1. Are you, or either of you, acquainted with the house and lot in Woodville, belonging to said estate? 2. Are you, or either of you, acquanted with the heirs-at-law of said deceased? If yea, state names, residences, and if any minors or married women. 3. Can a fair, equal, and beneftcial division of said lands be made among said heirs without a sale"? Beneath these interrogatories is copied in the record the following notice : "To the heirs-at-law of said deceased—You will take notice, that after ten days' notice of the foregoing interrogatories, a commission will issue to G. B. Hair, to take the answers of the above-named witnesses, and that within that time you can cross or object to the same, according to law"; which is signed by the probate judge, and beneath it are the following words : "I accept due and legal service of the above interrogatories, waive copy, and consent for commission to issue *instanter*"; signed by J. M. B. Kelly, guardian *ad litem*. The depositions of the witnesses, as set out in the record, are in the following words: "Answers to interrogatories propounded to John M. Bowdon and William Wood. To 1st interrogatory, they answer, 'Yes.' To 2d interrogatory, they answer, 'J. D. Johnson and Charles Johnson.' To 3d interrogatory, they answer, 'No, Charles Johnson is a minor.' "

On the hearing of the application, as appears from the bill of exceptions, the petitioner offered in evidence the record of the proceedings connected with the order of sale, as above set forth, which also contained a citation to J. M. B. Kelly, as guardian *ad litem ;* and at the bottom of the citation, as copied, were these words : "I accept due and legal service, waive copy, and consent to act", to which

Kelly's name was subscribed. "The plaintiff introduced said Kelly as a witness, who testified, that he did not in person accept the appointment of guardian *ad litem ;* that, to the best of his knowledge and belief, none of the endorsements were in his handwriting ; that he recollected nothing of the proceedings for the sale of said land ; that the clerk of the probate court, about that time, by his permission, was using his name as guardian *ad litem* generally ; that he did not recollect having ever contested a settlement, or an application to sell real estate, in this court ; that he thought he would have recollected it if he had done so, but would not swear that he did not act as such. The probate clerk, who was introduced as a witness by the defendant, testified, that a commission was issued to take answers to the interrogatories, but not returned ; and that the issue of the commission was evidenced by the fee-book. The defendant admitted that the house and lot was correctly described in the petition, and was the same described in his petition to sell, and was the property of the deceased.

"This being all the evidence", except proof on the part of the petitioner of the value of the house and lot, and of his absence in the army at the time of the sale, "the cause was submitted to the court for decision ; and the court thereupon rendered the following decision : 'The court is satisfied, after full investigation of the case, that the administrator acted in good faith. The proceedings as to the sale of the land did not conform strictly to law. The court has doubts as to jurisdiction ; consequently, the motion is overruled, and the petition not granted." The petitioner reserved an exception to the decision and decree of the court, and he here assigns the same as error.

MARTIN & SAYRE, for appellant.

W. C. OATES, *contra.*

BYRD, J.—Upon legal principle and decisions of this court, a court which has made a final order or decree, which, on the face of the proceedings, is absolutely void, should vacate it whenever its attention is called thereto by an appropriate application for that purpose.—*Stickney v.*

*Davis*, 17 Pick. 160; *Mobley v. Mobley*, 9 Geo. 247; *Acre v. Ross*, 3 Stew. 288; *Ex parte Sanford*, 5 Ala. 562; *Hood et al. v. Br. Bank Mobile*, 9 Ala. 336; *Moore v. Easley*, 18 Ala. 620; *Thomas v. Dumas*, 30 Ala. 84.

1. We are satisfied that, in this case, the order of sale, on the face of the proceedings, and the sale thereunder, were void.—Pamphlet Acts, 1853–4, p. 55; 9 Ala. 529; 21 Ala. 776; 29 Ala. 510; 30 Ala. 88; 19 Ala. 810.

2. It is eminently appropriate for every court to exercise the power of vacating its judgment or decrees, which are absolutely void on the face of the proceedings; and this, at any time after the rendition. In this case, at least, it is certainly appropriate to do so. The order and sale being wholly void, the court could have proceeded, upon applicacation made as required by law, to order a sale of the land; but, without vacating the previous order and sale, such a cloud would be cast over the title by the first sale, as would tend greatly to diminish the price at the second sale.

If a circuit court has the power, at common law, to vacate at a subsequent term a judgment rendered in favor of a plaintiff, or against a defendant, who was dead at its rendition, or any other void judgment, we can conceive no sound reason why the probate court, though one of limited jurisdiction, could not vacate a decree rendered in favor of, or against, a party dead at the time of its rendition, or any other void decree or final order. This power is one which pertains to all courts, as well to a justice of the peace, as to the supreme court of the United States.—*Ex parte Crenshaw*, 15 Peters' U. S. Rep. 119; *Huntington v. Finch*, 3 Ohio, (N. S.) 445; *Dicks v. Hatch*, 10 Iowa, 380; and other authorities cited *supra; Pratt et al. v. Keils et al.*, 28 Ala. 396.

Such a rule is not applicable to decrees and judgments which are voidable; and whenever it is asserted that a court of law has no authority to vacate a judgment, after the expiration of the term at which it was rendered, (as in the case of *Kidd v. McMillan*, 21 Ala. 325,) it evidently refers to judgments which are voidable only, and not such as are wholly void. The true rule seems to be, that any court should, on a proper application, vacate any final

order, decree, or judgment, at any time subsequent to its rendition, if the same is void on the face of the proceedings and record; but not where it appears to be void from facts *dehors* the record, except in the case of the death of either party to the suit or proceeding, at the time the judgment or decree is rendered, and in such other cases as may be authorized by long practice, or by statute.

The order of the court below, overruling appellant's motion, and refusing to grant his petition, is reversed, and the cause remanded for further proceedings in conformity to this opinion.