## WILSON ET AL. *vs.* ISBELL.

[ BILL IN EQUITY TO ENJOIN COLLECTION OF JUDGMENT ON BILL OF EXCHANGE. ]

1. *Acceptor, primarily is principal debtor.*—The acceptor of a bill of exchange is the principal debtor thereon, and as such is primarily liable to a *bona fide* holder and owner of the same, whether he be an accommodation acceptor, or an acceptor for valuable consideration.

2. *Judgment of court below; merged in judgment of supreme court on affirmance.*—A judgment rendered by a circuit court during the existence of the Confederate government in this State, which was afterwards carried by appeal to the supreme court of the State during the Provisional government established after the close of the war, and affirmed in that court, becomes merged in the judgment of the supreme court upon affirmance in that court, and is valid and must be enforced.

3. *Same; what does not discharge acceptor of bill of exchange from payment of such judgment.*—The failure of the owner of such bill of exchange, who has obtained judgments thereon against the maker and endorser, to press the collection of these judgments against them during the existence of the Confederate government in this State, until the maker and endorser became insolvent, does not discharge the acceptor from payment of the affirmed judgment against him.

APPEAL from Chancery Court of Talladega.
Heard before Hon. B. B. McCRAW.

The opinion contains the facts.

MORGAN & LAPSLEY, for appellants, contended that no valid judgment had been rendered against the appellants, and that according to the line of argument laid down in all the opinions of the present court, from *Coleman v. Chisholm* down to *Martin v. Hewitt*, such judgments could not be enforced by the courts of the present State govern-

ment, until ratified or in some manner legalized (if this can be done,) by the political department of the government. Ordinarily, the affirmance of a judgment by the supreme court merges the judgment of the lower court in that of the supreme court, but this merger includes only the parties, sureties, &c.; its effect is not to render a new and distinct judgment which extinguishes that of the inferior court, but combines the two as to every thing except the costs of this court. If the judgment when rendered had no validity, its affirmance by the supreme court could not give it validity. When is such a judgment valid? Was it valid only from the date of its affirmance, and invalid before that date? If the judgment was always valid so as to support execution, then the defendant is entitled to make all the defenses and claim all the benefits under the same, as if it had been rendered by a valid court. Isbell is estopped from denying the jurisdiction, &c., of the court whose aid he invoked, and after voluntarily going into such court and obtaining judgment there, he can not be heard to say that it had no right or power to enforce the collection of its judgment. It must amount to this, that he had no valid judgment, or that he had a valid judgment and was bound to exercise due diligence in its collection. On either hypothesis, complainants below are entitled to relief.

The facts charged show that Wilson was only surety for Wilson.—See 32 Ala. 456; 16 Ala. 398; 1 Ala. 565; Fell on Sureties, 218.

The relation of principal and surety obtains as well after as before judgment.—6 Ala. 718.

It is settled in this State, since the case of *Bruce v. Edwards*, 1 Stewart's Rep., that where a surety gives verbal notice to the creditor to proceed to collect his debt out of the principal debtor, and he fails to proceed, and in consequence thereof the principal becomes insolvent, or the surety sustains any other injury by the delay, he is thereby discharged.—*Strader v. Houghton*, 9 Por. 334; *Pickens v. Yarbrough*, 26 Ala. 417; *State Bank v. Walker*, 20 Ala. 512; *Herbert & Kyle v. Hobbs & Fennel*, 3 Stew. & Por. 9; *Pain v. Packard*, 13 Johns. 174.

The relation of principal and surety can always be shown by parol evidence. It is a question of proof, notwithstanding the apparent relations of the parties.—*Sherrod v. Rhodes*, 5 Ala. 683; *Pollard v. Stainton*, ib. 451.

If Wilson is entitled to relief on the facts stated in the bill, his remedy is necessarily in the chancery court. The events on which the right of discharge arises, *occurred after the judgment in the circuit court*. These facts could not appear on the record when the case was taken to the supreme court.

Wilson was entitled to have the *validity of the judgment* of the circuit court tested on appeal. The exercise of this means of legal defense against the judgment of the circuit court, could not debar him from a distinct ground of equitable defense against the judgment, arising after it had been rendered.

L. E. Parsons and J. W. Bishop, *contra*. (Appellee's brief did not come into the Reporter's hands.)

PETERS, J.—This is a bill filed in the chancery court of Talladega county, in the year 1869, by Wilson, as the acceptor of a bill of exchange, and the sureties on his appeal bond, to restrain the indorsee, Isbell, who is the owner of the bill of exchange, from enforcing the collection of a judgment against them in favor of Isbell. This judgment purports to have been rendered in a circuit court, sitting in said county of Talladega, in the year 1861, and from which Wilson took an appeal to the supreme court of this State in 1867, when said judgment of said circuit court was by said supreme court affirmed, and judgment was thereupon rendered against the appellant, Wilson, and the sureties on his appeal bond, for the amount of the affirmed judgment, damages and costs, in favor of said Isbell. The bill of exchange was drawn by Mickle, on Wilson, who accepted it, and indorsed by Cook, and negotiated by Mickle to Isbell for valuable consideration. It was dated at Talladega, Alabama, on the 24th day of November, 1860, and payable in ninety days after date, at Isbell's office, in said town of Talladega, Alabama. It was

drawn for the sum of eighteen hundred and sixty-eight dollars and ninety-seven cents. At the maturity of the bill of exchange, the parties to it failed to pay it. It was protested, and the liability of all the parties duly fixed. Isbell, the indorsee and owner of this bill of exchange, sued all the parties to it in separate actions, and obtained judgments against each, in a circuit court held in said county of Talladega, in this State, in 1861. These judgments were by default. On the first day of August, 1867, Wilson, the acceptor of said bill of exchange, took an appeal on the judgment against him in favor of Isbell, to the supreme court of this State, and gave bond on such appeal to suspend said judgment against him, with Haydon and Woodward as his sureties. In the supreme court, said judgment was affirmed at the June term thereof, in 1868, and the proper judgment was there rendered against all the parties appellant in said appeal. The bill of complainant in the court below alleges, also, that said Wilson was merely the accommodation acceptor of said bill of exchange, and that said Cook was but an accommodation indorser thereon, and these facts were known to said Isbell when said bill of exchange was negotiated to him. The bill was made and put in circulation solely for the benefit of Mickle, the maker thereof. It was also averred that said bill was for money loaned by Isbell to Mickle, and that said loan was to some extent usurious, but for what exact sum is not precisely stated. This usury was included in the bill of exchange. But it is not pretended that this was unknown to complainant Wilson at the time of the trial at law. It was also averred, that after the judgments against Cook and Mickle were rendered, executions were issued in each case for the collection thereof, and placed in the hands of the sheriff for collection. This was done in December, 1861. Afterwards, Isbell caused this indorsement to be made in one case, to-wit: "The sheriff is authorized to return this execution without making the money. 1st April, 1862: Cruikshank, plff's att'y"; and on the other Isbell himself made the indorsement in these words: "The sheriff is instructed to return this execution without making the money. May 8, 1862: James Isbell."

While these executions were in the sheriff's hands, each of the defendants had property subject to the same sufficient to have satisfied the same. All this was done without the knowledge or consent of Wilson. No other executions were ever issued on these judgments prior to the death of each of said defendants. Cook died in May, 1863, and Mickle in the spring of 1864. Their estates have been regularly administered, and have each turned out to be, insolvent, and said judgments have never been presented as claims against their respective estates. Besides this, the bill states that Wilson, in February, 1863, urged and requested Isbell to proceed to collect judgments against said Cook and said Mickle, and at the same time notified him that they each had property in their possession subject to levy and sale under *fi. fa.*, sufficient to pay the same, but Isbell would not agree to proceed with said collection of said judgments by execution, but said he would do so in some other way. It is also charged, that with due diligence Isbell could have collected said judgments by issuing executions thereon, but neglected and refused to do so, contrary to the request of Wilson, until their collection was impossible.

Isbell answered the bill of complaint, and denied all the allegations upon which the equity of the case is presumed to rest. But as the bill was dismissed for want of equity, a further recital of the matters contained in the answer is deemed unnecessary for the disposal of the cause in this court.

On the hearing, the chancellor dissolved the injunction which had been granted in the case, and dismissed the bill for want of equity. From this decree an appeal is taken to this court.

Courts of equity found their decrees upon the allegations of the bill. *Ex facto jus oritur.*—Coke, 2 Inst. 479. They regard the facts in the light that the parties themselves have treated them. Here there is no pretense that the judgments rendered in 1861 were invalid against any of the parties. As I understand the statements of the bill, they are treated throughout as valid proceedings. The complainant, Wilson, charges that he urged and requested

that executions should have been issued thereon in the cases of Cook and Mickle, and that a failure to do so has occasioned a failure to collect them ; that they are such claims as should have been presented to the respective representatives of Cook and Mickle, who have since died. This could not have been required if these judgments were nullities. The judgment against Wilson was also treated as valid, by making it the basis of an appeal to the supreme court in 1867. The argument, then, of the learned counsel for the appellants on this question, is without the record.— *Weathers v. Spears*, 32 Ala. 481. But if it were not, and these judgments were invalid, they might be set aside in a court at law, and the remedy in chancery would not lie.—*Johnson v. Johnson, adm'r*, 40 Ala. 247 ; *Summersett v. Summersett's adm'r*, *Ib.* 596 ; *McClure v. Colclough*, 6 Ala. 492.

I shall therefore omit any further notice of this very difficult question, and proceed at once to consider what I conceive to be the merits of the case made in the bill. The validity of the judgments of this court during the Provisional government of this State, after the suppression of the rebellion, can not now be questioned. They are to be regarded as valid.— *Weaver v. Lapsley*, 43 Ala. 224; *Powell v. Boon & Booth*, 43 Ala. 459. And the judgment of affirmance in the case of *Wilson v. Isbell*, in this court, at the June term, 1868, is the final and controlling judgment in the cause. It merges the judgment of the circuit court, on which the appeal was taken, into itself, whatever may have been the defects of that judgment before.— *Wiswell et al. v. Munroe*, 4 Ala. 9–19 ; *Duncan, adm'r, v. Hargrove et al.*, 22 Ala. 150 ; Rev. Code, § 3500. And unless it is shown that there is some equitable objection to the sufficiency of that affirmed judgment, it must be enforced. No such objection is shown in complainant's bill in the court below. The acceptor of a bill of exchange is not to be regarded as the surety of the maker or the indorser of such bill. He is a party primarily liable to the *bona fide* holder and owner. "The acceptor of a bill," says Chancellor Kent, "is the principal debtor, and the drawer the surety, and nothing will discharge the acceptor but payment or a re-

lease. He is bound, though he accepted without consideration, and for the sole accommodation of the drawer. Accommodation paper is now governed by the same rules as other paper. This is the latest and the best doctrine, both in England and in this country."—3 Kent's Com. 86, (marg.); *Lowe v. Chifney*, 1 Bing. N. C. 267; *Price v. Neal*, 3 Burr, 1354; *Levy v. Bank United States*, 1 Binn. 27; *Canal Bank v. Bank of Albany*, 1 Hill, 287; *Fenton v. Pocock*, 5 Taunt. 192; *Bank of Montgomery County v. Walker*, 9 Sergt. & R. 229; *Murray v. Judah*, 6 Cow. 484; *Clopper v. The Union Bank of Maryland*, 7 Harr. & John. 92; *Curch v. Barlow*, 9 Pick. 547; *Grant v. Ellicot*, 7 Wend. 227; *Marr v. Johnson*, 9 Yerg. 1; *Moody v. Findley*, 43 Ala. 167.

This court will take judicial notice of the general facts of the judicial and political history of the State, as a part of the current events of the times. It will, therefore, recognize the suspension of the executions issued on the judgments in favor of Isbell against Cook and Mickle, in 1862, not as a voluntary act of Isbell, but as a necessity he could not well avoid. At that time, the constitutional powers of the State were so obstructed and hindered that the plaintiffs in such judgments were compelled, if they proceeded at all in an attempt by execution to enforce their collection, to do so in the manner that the insurgent authority prescribed. There was no other then in force in this State. This authority required the plaintiff, Isbell, in the judgments against Cook and Mickle, to accept in satisfaction of these judgments an illegal and worthless currency, or the suspension of his right to collect the same by execution. He was not bound to accept the worthless or illegal currency, and the insurgent authority interposed to prevent the collection, by legal process, of any other. The law forces no one to do a vain, or useless, or impossible thing. It would have been both useless and vain, and, so far as the then regnant power was concerned, an unlawful thing, to have attempted to enforce the collection of these judgments, in legal funds, before the overthrow of the rebellion in this State. Then, had the acceptor, Wilson, really occupied the position of a surety on the bill of exchange, this suspension of the executions, as above said,

would not have discharged him.—*Bank of Augusta v. Earle*, 13 Pet. 519, 590, Taney, C. J., *arguendo ; Jones v. Walker*, 2 Pa. 694 ; *Solomon & Boullemet v. The State*, 28 Ala. 83 ; *Whitworth v. Oliver*, 39 Ala. 286 ; *Jeffries et al. v. The State*, 39 Ala. 655 ; 1 Greenlf. Ev. §§ 4, 5, 6 ; An Act to Regulate Judicial Proceedings, Dec. 10, 1861, §§ 1, 2, 3, 4, 5 ; Pam. Acts Reb. Leg. in Ala. 1861, p. 33, *et seq.* No. 33 ; Const. U. S. Art. I, § 10, cl. 1 ; Paschall's Ann. Const. U. S. p. 153, *et seq.;* Wingate's Max. 600 ; *McGar v. Williams*, 26 Ala. 469, 485 ; *Glover v. Taylor*, 41 Ala. 124, 128 ; *Martin v. Pope*, 6 Ala. 543 ; *Sawyer v. Bradford*, 6 Ala. 572 ; *Carpenter v. Devon et al.*, 6 Ala. 718 ; *Cox v. Mobile & G. R. R. Co.* 37 Ala. 320, 323.

That the bill of exchange was effected by a usurious consideration, could have been pleaded at law. When this is omitted, as was done here on the trial at law, equity will not afford relief.—*McCollum v. Prewitt*, 37 Ala. 573 ; 37 Ala. 320, *supra.*

The court below did not err in dissolving the injunction and dismissing the bill for want of equity. The decree of the chancellor is therefore affirmed, at the cost of appellants in this court and in the court below.